## Case No. 14,919.

### UNITED STATES v. DARTON.

[6 McLean, 46.] [1]

Circuit Court. D. Michigan.  June Term. 1853.

ILLEGAL CUTTING OF TIMBER — PROOF — INTENT — REASONABLE DOUBT — MISTAKE.

1. Under the act of 1831 [4 Stat. 472], for the punishment of offenses in cutting and removing timber from the United States lands, the rule of proof is fixed by the statute. The government must prove the cutting on the lands specified: the defendant may rebut the same. by showing circumstances of ignorance as to the section lines or mistake.

[Cited in U. S. v. Murphy, 32 Fed. 383.]

2. The proof must correspond with the charge —cutting oak is not cutting pine timber.

3. The proof of the act places the burden of explanation on the defendant. From an unlawful act an unlawful intent will be inferred.

4. A reasonable doubt is that which relates either to the character or the force of the testimony. and not a mere conjecture.

[This was an indictment against Peter Darton for cutting timber on public lands.]

The District Attorney and Frazer & Hand, for the United States.

Gray & Van Arman, for defendant.

Before WILKINS, District Judge.

The defendant was tried on an indictment charging him with removing and cutting timber on government lands. The testimony showed that his father owned a mill seat and various tracts of land, in the vicinage of the lands described in the indictment; that he resided at the mill, as the agent of his father, who lived in Chicago, and was under instructions to avoid cutting on the government lands; that a number of trees were cut by mistake across the lines, which were subsequently ascertained by actual survey, the defendant accompanying the surveyor, and showing the corner posts; and when he ascertained that he had cut over his lines, he wrote to his father, and caused the quarter section on which the timber was cut to be entered at the land-office. the certificate of which was given in evidence. It was contended on the part of the government: 1st. That circumstances showing ignorance and mistake, if believed by the jury, constituted no defense. 2d. That a subsequent entry of the lands was no defense.

CHARGE OF THE COURT. The prisoner at the bar. Peter Darton, whose true deliverance between him and the United States, you are obligated by your solemn oaths to make, according to the evidence given you in court, is charged with timber cutting and timber removing on and from the lands of the United States. The particular offense is created by, and defined and described in, the statutes of the United States. The act of March 2, 1831, by its second section, constitutes three general classes of offenses, with their respective accessorial subdivisions. The court will enumerate them in their order. that you may be better enabled to understand the particular offense now under consideration. The first is—The cutting and removing naval timber, specifically named red cedar and live oak. on lands specially selected and reserved by the government, or aiding in such acts, or wantonly destroying on such lands,. such naval timber.

By a previous enactment of congress. of the first of March, 1817 [3 Stat. 347], entitled "An act," making reservation of certain public lands "to supply timber for naval purposes," it was made the duty of the secretary of the navy, under the direction of the president of the United States, to cause such vacant and unappropriated public lands. as produced the live oak and red cedar timbers, to be explored, and to select such tracts as, according to his judgment. were necessary to furnish the navy of the United States. a sufficient supply of naval timber. It was then declared an offense, punishable by fine and imprisonment, for any person to cut any timber on such reserved tracts. without authority to do so by order of a competent officer. At the same time it was declared criminal to cut, or remove or be employed in removing, the naval timber specified. with intent to dispose of the same for transportation, from the same description of the public lands. Such, with other. measures of a penal character, and with the avowed design of preserving a supply of timber for the United States navy, were the salutary provisions of the statute of 1817. But the government was the proprietor of other lands, on which grew other timber. valuable in a great degree for other purposes than ship building. Much of these lands were surveyed by and under national authority. and by various statutory enactments were opened to settlements, and offered at a fixed price, which could neither be augmented nor lessened by demand.

The policy of these statutes was two-fold: —1st. The speedy settlement of the public domain; and thereby converting the wilderness into a garden, and by the acquisition of a revenue from the public sales. In furtherance of both objects. it was desirable, that the lands should be so far protected from spoliation, as to encourage immigration. and induce settlement and sale. Moreover, it was discovered that the protection afforded by the act of 1817, was not sufficiently extensive as to naval timber growing elsewhere. than on the reservations; and the public lands in the north and south-west, being repeatedly stripped of valuable house timber, by lawless trespassers, the national legislature was moved to amend and enlarge the provisions of the act of 1817, by those of 1831, embracing other lands, than the reserved lands. naval timber on other lands, and other timber than naval timber on the

[1] [Reported by Hon. John McLean, Circuit Justice.]

unreserved public lands of the United States. Thus originated the other two classes as designated in the 1st section of the last act, —namely: 2d. The offense of cutting naval timber on other lands, &c. 3d. The offense of cutting or removing, &c., other timber than naval timber on other lands than naval lands, with the intent to export, dispose of, use, or employ the same in any manner whatsoever, other than for the use of the navy of the United States. This last, comprehends the charges set forth in this indictment, which contains four counts. The 1st is for cutting 3,000 pine trees, at township 12, north of range 17 west, and township 12, north of range 16 west, on section 13 of township 12, north of range 17 west, and on section 13 of township 12, north of range 16 west, in the county of Oceana and state of Michigan. The second count, is for aiding and assisting in the trespass specified in the first. The 3d, is for removing 5,000 timber logs from the premises described, and with the intent stated. And the 4th count, is for aiding in the last act described, or being employed in the same. To these charges, the defendant has plead not guilty—denying the cutting and the removing in every form and shape, in which the same is charged. Before any application of the law to the facts of this case—the court will briefly detain your attention on two prominent propositions involved: 1st. What must be proved by the government, in order to sustain the prosecution. 2d. What must be proved by the defendant, in case the government has made a case to warrant a conviction, as matter of complete exculpation. What must be proved by the government? The rule of proof is fixed by the statute. The offense is cutting or removing timber from government lands, with the evil intent described. The fact then, must be fully established by conclusive proof, that timber of the kind described was cut by the defendant, or by his procurement: and that the same was cut on the township, and section, and range, specially set forth. Cutting other timber, than that charged, will not suffice. If pine trees, or pine logs are charged, proof of oak or hickory will not do. And so also, if the cutting is on other lands, the proof will not do. The defendant must be acquitted.

But, gentlemen, if the specific act of cutting or removing is proved, the guilty—the unlawful—intent will be presumed. From an unlawful act an unlawful intent will be inferred. The statute declares the act criminal. Proof of the commission of the act, raises the presumption of a guilty knowledge and a guilty intention. If poison be given, the malicious intent will be inferred, and need not be proved. But this presumption may be rebutted, by the evidence of circumstances, showing a lawful intention. This applies to all crimes. To felony and to misdemeanor. An evil intent is an essential ingredient of every crime. And the statute

does not contemplate the punishment of the innocent. An unlawful act with a lawful intention, is not criminal.

With this view, the law declares one intent which exculpates in express terms, viz.; the intent to appropriate the timber cut to the use of the navy of the United States. Nevertheless this does not exclude a defense based upon circumstances, clearly showing that no trespass was designed by the defendant. Understand this—the government must prove two prominent facts. The cutting, and the premises 'where cut. If such proof corresponds with the allegations of the indictment, and there is no explanatory proof rebutting an unlawful intention, your verdict must be guilty. But otherwise, after such proof on the part of the government, if the defendant clearly shows that a mistake was committed by the defendant himself, or, by the hands under his direction, in regard to the lines of survey, if proof be furnished, satisfactory to the jury, that the defendant owned timber lands in the vicinage, or, was the agent of the owner, and that the section corners and quarter posts, as designative of the public survey, were such, that a m stake might be committed, as to the lines separating the private entry, from the unsold lands, and that the trespass charged was thus committed, without the design of cutting on the government lands. If such be the conclusive character of the defendant's evidence, the inference of a guilty intention is removed, and an acquittal is his right under the benign provisions of the criminal law. For it is a blessed and an unquestionable truth—a maxim not to be controverted—that the government of the United States seeks not the conviction or punishment of an innocent man. Conviction, not recovery, is the important word; punishment, not recompense, the great object sought by the prosecution. Damages are recoverable by civil action. Reparation for injury, relief, and not a penalty.

Now, the United States, as a great land proprietor, is not inhibited the usual civil remedy allowed to and provided for all, for any loss or injury sustained. The courts of justice are opened to the civil actions of the government as to those of an individual. But there is a vast difference in the rule of judgment between the civil action and the criminal verdict. In the former, the proof of the injury and its extent, calls justly for the rendition of appropriate damages; and the plea of ignorance or mistake, or an innocent intention, availeth not. The injury is done, the ignorant trespasser must repair the loss. So with the government. Its landed dominion is under the protection of the general law, independent of the statute of 1831. The action of trespass is an action to which the government may resort, and under which it may recover damages to the full extent of the injury sustained. And, a conviction and punishment of a defendant, for a trespass, un-

der the act of 1831, would not protect under a civil action for the injury sustained. Neither would a judgment, on the latter remedy, be a sufficient plea of defense under the indictment. Wherefore, then, exclude from consideration in this species of criminal prosecution, the proof which negates an unlawful intention, or shows a clear mistake, or such ignorance as establishes beyond all doubt an intention other than that of cutting or removing the government timber?

The court, then, has no hesitation in giving you this instruction: That if you believe, from the evidence given you in court, that the defendant cut timber on the lands in question, through a misapprehension at the time as to the lines which separated the government lands from those of his father, whose agent he was, and that he then acted under a mistake, believing that the premises where the timber was cut, were those of his father, and not the public lands, your duty is to acquit. What, then, has been proved upon this issue? This is for your exclusive deliberation. It is your province, your sole province, to settle what facts have been proved. The court cannot, with judicial propriety, interfere with you in the discharge of this duty. Your opinion as to the facts, is that which must compose your verdict. The opinion of the judge is not your opinion, and should not be made the foundation of your opinion. And, furthermore, your verdict is the opinion of each and every one of you. Such is the peculiar and emphatic injunction of a juror's oath. Your conscience cannot repose with ease either upon what your fellow-juror or the judge may think, as to the facts, no more than the judge can safely rely, at all times, upon the doctrines urged by able, learned and upright counsel. The inquiry, then, comes back to yourselves—what has been proved? Much difficulty, honestly felt by jurors in endeavoring to bring their minds into accord, arises from their omission to ascertain, in the first place, the facts upon which they are all agreed. On retiring, it is usually propounded, Is the party guilty, or is he not guilty?—a question of a general character, including a response to many particulars which together make up guilt; but upon which a vote is taken, without any antecedent settlement of material facts. Whereas, if these are in the first place made the subject of careful deliberation, comparison and determination, no inconvenient protraction or disagreement would, in many cases, occur. It is your duty to examine, and weigh, and sift the testimony. It is your duty so to inquire, as to be ready to give a reason to your own consciences of the faith that is in you. You cannot jump satisfactorily to conclusions in so important a matter as a verdict in a criminal case. Enquire, then, in your own minds, now, even now, what facts are conceded, or what are proved, and what are the subject of conflict? Did the defendant cut pine trees on

the government land specified? Is this so, there is no contest about the title to the premises. They are the government lands acquired from the Indians, by the treaty of Washington.

There is no contest about the ownership and occupancy of the lands in the immediate vicinage. The father of the defendant was their owner, and of a mill seat for the manufacture of lumber, on an adjoining section. There is no contest about the residence of the defendant, and the relation he bore to the management of the mill and the lands. He was his father's servant, clothed with a special power, and under direction to cut no timber from the government lands. There is no question as to the roads leading to and from the mill, and the purpose for which those roads were used—bringing timber to the mills. There is no question but what timber, to a great extent, was cut by some persons on sections 13 and 18. There is no question but what the 40 acre lots on S. W. quarter of section 18, and N. E. quarter of section 13, were used for the purpose of supplying the mill; and that the timber cut by the defendant's direction, was not only cut upon these 40 acres, but also across the lines, and on the lands of the government adjacent.

Reaching this point, then, you have got to the remaining inquiry, mainly affecting the guilt or innocence of the defendant: Was this cutting done by him, and the hands under him, under a mistake, and a well-grounded ignorance of the lines which separated his father's land from that of the government? The principal witness for the government is Mr. Bean, who visited, observed and surveyed the premises, by direction of the government agent, entrusted with the care of the government timber in this district. The defendant showed him the quarter post on the township line, or section line, and accompanied him the whole day in running the section lines. No controversy in relation to these facts, and none, of course, in relation to what the witness observed, that much timber appeared to be cut on parts of sections 13 and 18. During this survey, the defendant admitted that he had cut some of the timber, but claimed the proprietory intercession of the witness, because he had shown him the post, and aided him in ascertaining the lines. Such is the alleged admission of the defendant, and its force and extent rests upon the credit you give to the witness, by whom it is established, and all that defendant said at the time must be taken together as one and an entire admission. There is, in addition to the charge of cutting, a count for the removal. If the defendant admitted he cut the timber, and you are satisfied that he had the management of the mill, and that the timber was removed to the mill, his admission will cover both charges.

In every criminal accusation reasonable doubt should materially sway the mind, in favor of the accused. This principle is of

higher origin than human laws. It should govern in social life. It must control in judicial tribunals. Wherefore condemn—if the mind hesitates as to guilt? But the suggestion of merciful conjecture, is not the reasonable doubt, contemplated by the law. The doubt of the juror, consistent with his reason, is that which relates either to the character or the force of the testimony. The test is, is or is not such a fact fully proved? If yea, are the witnesses by which it is established, worthy of belief? If yea, all doubt vanishes, and there remains no basis on which the reason can rest. Sometimes a witness may be unimpeached as to general character, and may be uncontradicted either by others, or be perfectly consistent in his statement; and yet, from his deportment on the witness' stand, render himself unworthy of credit. A hesitating or confused manner, or a studied narrative of which a jury may judge from all that accompanies the delivery of the testimony, will justly cast a shade of doubt upon it all. Of this, however, the jury alone, unaided either by the court or the counsel, must decide for themselves. And certainly where two witnesses contradict each other as to a particular fact, and one exhibits a frank and unbiased manner; and the other is confused, hesitating, and evidently biassed,—the reliance of the jury can with more safety be given to the first, while they reject entirely the last. It is another matter altogether, where discrepancies are fairly established in the narrative of the witness. Where he states in his examination in chief, a fact, which he contradicts in his cross-examination; or where he conceals the whole of a matter, which is afterwards extracted by cross-interrogation, such discrepancy, or such conduct, if clearly apparent to the jury, should lead to the rejection of the testimony.

The jury found a verdict of guilty; and the court sentenced the defendant to one day's imprisonment, and fifty dollars fine.