## Case No. 15,673.

### UNITED STATES v. McENTEE.

[10 Chi. Leg. News, 41; 2 N. W. (O. S.) 13; 23 Int. Rev. Rec. 368.]

District Court, D. Minnesota. Oct., 1877.

#### PUBLIC LANDS—CUTTING TIMBER—WHEN ALLOWED.

[Cited in U. S. v. Murphy, 32 Fed. 379, to the point that a settler on public lands has no authority to cut down and sell timber for other than purposes of cultivation.]

This is an action to recover the value of a large quantity of timber cut by the defendant [Thomas McEntee] upon a section alleged to be a portion of the public lands, and removed therefrom. It is claimed by the defendant that the timber was cut upon a tract of land entered by him under the act of congress approved May 20, 1862 [12 Stat. 392], entitled "An act to secure homesteads to actual settlers upon the public domain." It was undisputed that the timber was cut down upon land for which defendant had paid the entry fee and made an affidavit required by the law, April 12, 1874. There was some evidence tending to show that the timber was cut for

purposes of traffic and sale alone. The court was requested to instruct the jury, "that if the defendant had made an affidavit and paid the entry fee for the land, he was entitled to cut and remove the timber thereon for any purpose whatever."

Wm. W. Billson, U. S. Dist. Atty.

J. J. Egan and Wm. W. Irwin, for defendant.

NELSON, District Judge (charging jury). I decline to give the instruction requested. The defendant has attempted to show that the timber was cut upon his homestead, as the land was being put in suitable condition for cultivation, so that the title thereto might be perfected. If you so find, the verdict must be against the government; but if you should determine the proof showed the cutting and removal were for sale and traffic alone, then a question is presented—an important one—what rights and privileges are secured by virtue of an entry under the homestead law before a patent has issued? Until 1862, congress had passed no general law offering the public domain in a limited quantity to any person, the head of a family, who would cultivate and make a permanent home thereon. Pre-emption laws securing the rights to enter land by purchase at a minimum price fixed per acre, had been enacted and donation laws applicable to particular states had been passed, but the liberal policy of offering homesteads had not before been extended to all persons. There can be no doubt it is a wise policy and beneficial in its results. The quantity of land is limited to 160 acres, the patent is not issued until after proof of residence upon, and cultivation for the term of five years, and no land acquired under the act shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor. If there is an actual change of residence or abandonment of the land for more than six months at any time before the expiration of the five years, the land entered will revert to the United States.

It becomes an important question, then, if the homestead entry is wholly timber land, or nearly so, as in this case, what rights and privileges with reference to the timber are acquired. Congress, by this law, intended to foster and encourage the agricultural interests of the country and induce settlement of the vast vacant public domain, and secure permanent homes of settlers. Everything necessary for the cultivation of the land and manifesting an intention to make permanent occupancy and bona fide settlement, is legitimate and proper to be done. The land can be cleared and timber sold, if cut down for the purpose of cultivation; but if sale and traffic is the only reason for severing the timber, and it is not done with a view of improving the land, the intentions of the lawgiver are subverted. Each case, however, must depend upon its attendant circumstances, and it is a question of fact for a jury to determine whether the person claiming the benefit, is acting in good faith. I know of no better rule to apply than the one adopted in the case of a lessee for life or a term of years, charged by his lessor with waste. If the land leased is wild and uncultivated and wholly covered with timber, the lessee would undoubtedly have a right to cut so much as may be necessary for cultivation, and the extent to which timber may be cut is always a question of fact for a jury. Unless there is something exceptional, which does not appear, the defendant could not sever all timber and sell it, without making some provision for fences and other necessities of his farm, and such as he does cut and sell must be incident to the improvement of the land. A little common sense and good judgment applied to the facts in this case will give a correct verdict.

The jury found for the plaintiffs.