## Case No. 15,863.

### UNITED STATES v. NELSON.

[4 Cranch, C. C. 579.] [1]

Circuit Court, District of Columbia. Oct. Term, 1835.

#### SLAVE—PUNISHMENT FOR LARCENY.

A slave, convicted of larceny, is to be punished by whipping, although not charged as a slave in the indictment.

The prisoner [negro Nelson] was convicted of stealing a hair cap, of the value of one dollar and twenty-five cents. It appears. in evidence, that he was a slave, although not charged as such in the indictment.

THE COURT (nem. con.) sentenced the prisoner to be whipped with twenty stripes.

---

## Case No. 15,864.

### UNITED STATES v. NELSON.

[5 Sawy. 68; [2] 1 San. Fran. Law J. 398.]

District Court, D. Oregon. Jan. 25. 1878.

PUBLIC LANDS—CUTTING TIMBER—LAND OCCUPIED AS MINING GROUND.

1. The enactment of the pre-emption, homestead and mining laws by congress has modified the operation of the act of March 2, 1831 (section 2461, Rev. St. [4 Stat. 472]), prohibiting absolutely the cutting or removal of timber on the public lands. so that persons occupying portions of such lands under such laws may, before becoming the owners thereof, cut and use the timber thereon so far as the same may be necessary to accomplish the purpose for which the land is occupied.
[Cited in U. S. v. Williams. 18 Fed. 477; U. S. v. Murphy, 32 Fed. 378; U. S. v. Stone, 49 Fed. 850.]

2. A person occupying a portion of the public land as mining ground under the mining law of the United States is not bound to pur-

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

chase the same, but until he does so, he has a mere license to work the ground for the precious metals therein, and has no right to cut or use any timber growing or found thereon, except as the same may be necessary to enable him to mine the same conveniently.

3. The defendant occupied seventy acres of public land as mining ground and cut timber from four acres thereof in advance of his mining operations, and disposed of the same for his own benefit, assigning as a reason therefor, that by cutting the timber in advance of the mining operations the stumps would rot and therefore be more easily removed: *Held,* that this cutting was not necessary to the mining operation and therefore unlawful.

[Cited in Ladda v. Hawley, 57 Cal. 55.]

Information for cutting timber on the public land in violation of section 2461 of the Revised Statutes.

Rufus Mallory, for plaintiff.
L. O. Stearns, for defendant.

DEADY, District Judge. On November 24, 1877, an information was filed in this court by the district attorney against Levi W. Nelson, charging him with cutting and removing from the lands of the United States, to wit, a certain described portion of township 9 south, range 39 east, in the district of Oregon, five hundred pine trees, of the value of one hundred and twenty-five dollars, for his own private advantage and profit, contrary to section 2461 of the Revised Statutes. The defendant pleaded "not guilty;" and the case was submitted to the court for judgment upon an agreed case, that was stipulated and agreed should be deemed and taken as a special verdict.

The special verdict substantially finds: (1) That between January 1, 1875, and November 1, 1877, the defendant cut and removed timber, as alleged, but that there were only one hundred and fifty of the trees, of the value of twenty-five cents each; (2) that in 1870 the defendant took up and claimed the premises, containing about seventy acres, for the purpose of placer mining, and in August, 1872, caused the same to be duly surveyed and platted as a placer mining claim; (3) that in 1873 the defendant made due proof of the performance of the conditions necessary to entitle him to a patent from the United States for the premises, except the payment of the price fixed by law therefor, which has never been paid, and that said premises are not within any organized mining district; (4) that said premises are "placer mining ground;" and it is necessary, to successfully mine the same, to remove the trees standing thereon, and "that it is better for the purpose of such mining that the timber be removed so far in advance of the work as to give opportunity for stumps to rot and so be more easily disposed of;" (5) that between 1870 and 1877, the defendant, for the purpose of working the premises as a mining claim, constructed buildings, flumes and ditches thereon to the value of two thousand five hundred dollars; and has worked said ground continuously during the mining season of each year by employing from fifteen to twenty miners during such period; (6) that it is the business of the defendant to work such mining ground during the mining season, and he expects to continue the same permanently; (7) that about one third of an acre of said ground is worked over each year, and that said one hundred and fifty trees were taken from about four acres of the same.

Neither the information nor the special verdict states according to what meridian the township containing the locus, is nine south and thirty-nine east. But as there is but one meridian in this judicial district, the Wallamet, it must be construed as referring to that. This locates the premises in Baker county, Oregon. Section 2461, supra, upon which this information is founded, is section 1 of the act of March 2, 1831. It prohibits absolutely the cutting or removal of any timber from the public lands for any purpose "other than the use of the navy of the United States," under a penalty of not less than three times the value of the timber, and imprisonment not exceeding twelve months. The pre-emption, homestead and mining laws of subsequent date which confer the right of occupation of limited quantities of the public lands upon settlers and miners for agricultural and mining purposes, and with a view of enabling them to obtain patents therefor, are laws upon the same subject—in pari materia—with the timber act of 1831, and must be construed with it. It is not to be supposed that congress authorized the occupation of the public lands by the laws aforesaid for the purposes of agriculture and mining, without intending to so modify the operation of the timber act as to permit the occupants thereunder to cut and use the timber upon their respective claims so far as the same is necessary for the purpose for which they are occupied. By the enactment of these laws, the timber act is so far repealed. Such has been the ruling of this court in giving instruction to juries in several unreported cases.

In Re U. S. v. McEntee [Case No. 15,673], the defendant was sued in the district court for Minnesota, to recover the value of timber cut by him on the public lands. The defendant justified the cutting upon the ground that he occupied the premises under the homestead act of 1862 [12 Stat. 392]. The court (Nelson, J.), instructed the jury that "everything necessary for the cultivation of the land and manifesting an 'intention to make permanent occupancy and bona fide settlement, is legitimate and proper to be done. The land can be cleared and timber sold, if cut down for the purpose of cultivation; but if sale and traffic is the only reason for severing the timber, and it is not done with a view of improving the land, the intentions of the lawgiver are subverted."

The jury found a verdict for the United States.

Section 2319, Rev. St. (section 1, Act May 10, 1872 [17 Stat. 91]), declares that "all valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, are hereby declared to be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase by citizens of the United States," under certain regulations as to quantity and work thereon during the period between selection and purchase. Among the conditions upon the keeping of which this right of occupation rests, is the performance of a certain amount of labor upon the premises annually. If the claim is a vein or lode, the occupant may purchase the same upon proof of the performance of the conditions precedent by paying therefor at the rate of five dollars per acre, or if, as in this case, it be a "placer," at the rate of two dollars and fifty cents per acre. Title 22, c. 6, Rev. St. It is manifest from the reading of the whole of this chapter of the Revised Statutes that in contemplation of the law this right or privilege of exploration and occupation is only given as preliminary to a purchase by the occupant, and that if it shall be ascertained that the location contains "valuable mineral deposits," he will proceed without unnecessary delay to obtain a patent from the United States therefor, by making proof of the location and labor thereon and the payment of the purchase price therefor. But, as was held in Chapman v. Toy Long [Case No. 2,610], there is no specific provision of the law, compelling the occupant to purchase, and he may continue to hold the claim by occupation and labor, so long as he desires, and then abandon it. The defendant in this case occupies the premises under this law, and claims the right to cut and remove the timber therefrom as incidental to and in aid of his right to mine thereon. But he is not the owner of the land until he pays for it, and obtains the United States patent. It is a part of the public domain. In the meantime the defendant is occupying it under a mere license from the government, which may be revoked at any time by the repeal of the act giving it. The defendant, however, is not to be considered in default for not having paid for the land. His license under the statute to occupy and to work it as mining ground is sufficient for that purpose until withdrawn by congress, without purchasing it. But in considering the question whether this land is occupied by the defendant solely as mineral land or in whole or in part for its timber; and whether the trees in question have been cut and removed only as a necessary and convenient means of working the ground as a placer mine, and not otherwise, the fact that he has occupied it under the act of 1872, for nearly six years, as land containing "valuable mineral deposits," without availing himself of his right to purchase it at the mere nominal price of two dollars and

fifty cents per acre cannot be overlooked. If the land or the greater portion of it is of little or no value as mining ground but valuable for its timber, the defendant might occupy it for a few years until he had stripped the tract of its timber, and worked out the few acres that really contained valuable deposits, and then abandon it to the government. In the region where this land is situated timber is very scarce and valuable. The temptation to locate one hundred and sixty acres of timber land as mining ground, and by putting a few dollars' worth of labor upon it annually, be thereby enabled to dispose of the timber upon it at from fifty to one hundred dollars an acre, is very great, and if the defendant's construction of the law is to obtain there is nothing to prevent its being done. No proof is required as to the amount of mineral deposit in the land; and the only security against the law being used as a cover to strip the public lands of their valuable timber is to limit the right of the locator of a mining claim to the use of such timber thereon as is necessary to the actual working of such claim.

Apply these suggestions to this case. The defendant has located seventy acres of land under the mining law, and occupied it as a mining claim for several years. During this time he has worked over two or three acres of the ground, and cut timber off of four other acres, and disposed of it for his private benefit—probably sold it for firewood. It is admitted that the defendant has a right to cut down or destroy the trees so fast as the earth in which they stand is dug or washed away in the process of mining; and it may also be admitted that such timber may be used or disposed of by the locator in any way that is most profitable to himself rather than to let it remain on the ground to decay. But whether the cutting of the timber is merely incidental to a bona fide mining operation, or the mining operation is a mere pretext for appropriating and disposing of the timber is a question of fact to be determined in each case by its own circumstances. But when a party goes beyond this, and removes and disposes of acres of timber in advance of his mining operations for no better reason than that "it is better" for the purpose of mining to remove the timber "so far in advance of the work as to give opportunity for the stumps to rot" before the bank on which they stand is sluiced or dug down, in my judgment, he is speculating in United States timber rather than mining for the precious metals. If the law were construed so as to permit four acres of timber to be removed to give the stumps time to rot before mining operations were commenced, that from ten, fifty, or one hundred acres might be removed for the same reason. The removal of timber from a mining claim to be justifiable should proceed pari passu with the operation of mining. Whoever wants to go further or faster than this, and for any reason appropriate the timber to his own use in advance of

his mining operations, can only do so safely by paying the purchase-price of the land, and becoming the owner thereof.

There must be judgment for the plaintiff on the verdict. In arriving at this conclusion it is not necessary to impute to the defendant a conscious purpose to practice any of the devices which it has been shown his construction of the law would permit. They have only been suggested to show that the consequences of such a construction would be a material perversion and abuse of the law, and therefore it ought not to prevail. The defendant may have been honestly mistaken as to his rights, or he may have become so accustomed to the violation of the law with the apparent consent of the government, that he regarded it as of no effect.

Since the settlement of this coast the law has been enforced by fits and starts, most oftenly against the "small-fry." The executive department, in case of the large operations at least, has usually nullified the action of the courts by arbitrary pardons, or ignored the law by compromising in advance with the trespassers in consideration of a trifling compensation, called "stumpage." In 1864, a party who had openly taken hundreds of thousands of dollars worth of a rare and most valuable cedar timber from the public lands near Port Orford, and manufactured and sold the same in the San Francisco market, was found guilty in this court of violating the statute and fined the comparatively small sum of eighteen thousand seven hundred dollars—the smallest fine the law allowed. Shortly after, the executive department without consulting the district attorney, or having any information concerning the merits of the case except the ex parte and interested statements of the defendant, granted him a full and unconditional pardon.

Under these circumstances I do not deem it expedient to punish the defendant further than the law requires. The government by its indifference and neglect to enforce the law has encouraged its violation.

The defendant will be sentenced to pay a fine equal to triple the value of the timber cut and removed—seventy-five dollars.