[No. 6,300.—In Bank.]

## A. G. LADDA v. C. B. HAWLEY.

57   51
81   62
81   373
81   375
81   515
57   51
96   112

PUBLIC LANDS—PRE-EMPTOR—TIMBER.—A pre-emptor of public land, before payment, has no right to cut the timber therefrom, unless it is cut either for the use of the navy, or to enable the pre-emptor to cultivate the land.

CONTRACT—ILLEGAL CONSIDERATION.—If a pre-emptor of public land, before payment, makes a contract permitting another to cut timber from the land, he cannot recover the price agreed to be paid, unless it be shown that the timber was cut either for the use of the navy, or to enable the pre-emptor to cultivate the land; and the subsequent acquirement by the pre-emptor of the title does not confer a right of action.

APPEAL from a judgment for the plaintiff, and from an order denying a motion for a new trial, in the Fourteenth District Court, County of Nevada. REARDAN, J.

*Johnson & Cross*, for Appellant.

The act of Congress made it a crime to cut timber on the public lands. (Rev. Stats. U. S. § 2461.) The contract was void. (Civ. Code, § 1550.) Courts will neither enforce an illegal executory contract, nor, if executed, aid either party in recovering back what has passed under it. The lands are

public lands as to the right to cut or remove timber until the pre-emptor's title is perfected, except for the purpose of building on, fencing, or improving the land.

*Hupp & Walling*, and *M. T. Johnson*, for Respondent.

A pre-emptor has the right to cut the timber of his land for the purpose of improvement, or for the use of the navy.

It does not appear in this instance that the timber was cut for any other purpose. If cut for that purpose, he had the right to sell it.

It nowhere appears in the pleadings in this case that the removal of the timber was not for one or the other of the above causes.

The defendant, in order to avoid a contract upon the grounds of its illegality, of which he has received the full benefit, must make out a full case, free from any doubts.

If two different interpretations can be placed upon a man's acts, he has a right to be judged by the one that is lawful.

The defendant is not in condition to avail himself of the plea that the contract is void.

The plaintiff at least had an interest in the timber at the time of the execution of the contract, which no other person had—a right of which the Government itself could not deprive him. Defendant received the timber—has still a portion of it in his possession—all of which he refuses to return or to pay for. He cannot now avail himself of the plea that it was an illegal contract. (*Williams* v. *Paul*, 6 Bing. 653; *Adams* v. *Gay*, 19 Vt. 370; *Sumner* v. *Jones*, 24 id. 317; *Powhatan Steamboat Co.* v. *Appomattox Railroad Co.* 24 How. 247.)

Although the contract when originally made might have been illegal, still, when the plaintiff paid for his land, he acquired a title to all timber that was on the claim at the time of his pre-emption application, and cured any defect in the contract as originally made. (*Mayer* v. *White*, 24 How. 317.)

MYRICK, J.:

Plaintiff in his complaint alleged that defendant was indebted to him in a balance of $432.25 and interest, for 473,802 feet of

pine timber, sold and delivered by plaintiff to defendant, at $1.25 per thousand.

Defendant, in his answer, denied the indebtedness, and averred that the only transaction the parties ever had concerning timber was, that plaintiff represented to defendant that he (plaintiff) was the owner of certain lands, and desired to sell to defendant the timber growing thereon; that, relying upon such representations, and believing them to be true, defendant agreed to pay the above price for so much of said timber as he should cut down and use; that after he had cut down and used the timber, and paid plaintiff in part therefor, he ascertained that plaintiff was not the owner of the timber, but that the same was, when so cut and removed, timber belonging to the public domain of the United States, which plaintiff had no right to sell, and that plaintiff is liable in both civil and criminal actions. Defendant averred that plaintiff ought not to have or maintain his action, for the reason that the contract is void, the only consideration being the granting to defendant by plaintiff the right to cut timber from the public land of the United States, which cutting is prohibited by the laws of the United States.

On the trial, plaintiff gave in evidence an agreement signed by himself, dated May 11th, 1876, expressing that he thereby sold and conveyed to defendant " all the pine timber growing on his ranch in Nevada County," covering 160 acres, for the consideration therein expressed; viz., $100 then paid, the balance to be paid at the rate above specified; " said timber to be considered as usually cut for milling purposes." The agreement gives to defendant the use of all springs of water, and right of way for roads, mill sites, etc., necessary for the cutting and manufacture of said timber. The plaintiff testified that he filed a pre-emption claim upon the quarter-section of land from which the timber was cut in May, 1874, in the Sacramento United States Land Office, and that the application was entertained; that since the commencement of this suit he had paid to the United States Land Office the Government price of the land; that at the time said contract was made, plaintiff had a portion of the quarter-section under fence. Another witness testified to the quantity of timber cut.

Thereupon defendant moved the court for a nonsuit, on the

ground that the action is brought upon a void contract, it appearing from plaintiff's evidence that he filed a pre-emption claim on the land in 1874, and paid for it after March 22nd, 1878, thereby showing that the same was public land at the time the contract was made and the timber cut. The Court denied the motion, and the defendant excepted.

The trial thereupon proceeded, findings of fact were filed, and judgment went for plaintiff. Defendant moved for a new trial, which was denied, and defendant appealed from the judgment, and from the orders denying his motions for nonsuit and for a new trial. From the view we take of the case, it is necessary to consider only the ruling on the motion for nonsuit.

By the Act of Congress of March 2nd, 1831, § 2461 of the Revised Statutes of the United States, it is a penal offense to cut timber upon any of the public lands of the United States, " with intent to export, dispose of, use, or employ the same in any manner whatsoever, other than for the use of the navy of the United States," and the offense is punishable by fine and imprisonment. It is a well-settled principle of law, that if a contract grow immediately out of, or is connected with, an illegal act, courts will not enforce it, but will allow the objection to be made by either party (2 Kent, 466, 467); and unless some act, express or implied, upon the part of the Government gave permission for or justified the cutting of the timber which is the foundation of this action, such cutting was illegal, and the contract relating thereto is void.

Conceding that plaintiff was a pre-emptioner, he had all the rights for the enjoyment of which the Government permits pre-emption. Those rights are to occupy, settle upon, and use the land for the purpose of settlement, which would, of course, include the right of clearing away the timber for the purpose of cultivation or occupation. Until he shall perfect his title by purchase, the land remains public land, and he may use only in such manner as the Government authorizes.

In *United States* v. *McEntee*, 23 Int. Rev. Rec. 368, the defendant was sued to recover the value of timber cut by him on the public lands. He justified the cutting upon the ground that he occupied the premises under the Homestead Act of 1862. The Court instructed the jury, that " everything necessary for

the cultivation of the land, and manifesting an intention to make permanent occupancy and *bona fide* settlement, is legitimate and proper to be done. The land can be cleared and timber sold, if cut down for the purpose of cultivation; but if sale and traffic is the only reason for severing the timber, and it is not done with a view of improving the land, the intentions of the law-giver are subverted." The verdict was for the United States.

In *United States* v. *Nelson*, 5 Sawy. 68, the defendant had located seventy acres of the public lands under the mining law (Rev. Stats. U. S. § 2319), and had occupied it for several years as a mining claim. The Court said: "It is admitted that the defendant has a right to cut down or destroy the trees so fast as the earth in which they stand is dug or washed away in the process of mining; and it may also be admitted that such timber may be used or disposed of by the locator in any way that is most profitable to himself, rather than to let it remain on the ground to decay. But whether the cutting of the timber is merely incidental to a *bona fide* mining operation, or the mining operation is a mere pretext for appropriating and disposing of the timber, is a question of fact to be determined in each case by its own circumstances." Judgment was for plaintiff.

In the case before us, the land being, at the time the contract was made and the timber was cut, public land of the United States, it was incumbent upon the plaintiff to show, either that the timber was cut for the use of the navy of the United States, or that it was cut for the purpose of enabling him to occupy or cultivate the land, which would, of course, justify the cutting of timber for the necessary building and fencing of the land. There is no evidence at all in either of those directions. On the contrary, the paper signed by plaintiff gave to defendant the right of way for roads and mill sites, and the timber was "to be considered as usually cut for milling purposes," which would seem to indicate that commercial purposes were the paramount, if not only, purposes in view.

The plaintiff is not aided by the fact, that the defendant appropriated the timber, or any portion of it, to his own use, and has not offered to return it. The cases cited by him relate to instances of sales of personal property under contracts void at the time, but subsequently ratified, the vendors having been the

owners of the property. In this case, the plaintiff, at the time the contract was made and the timber was cut, *did not own* the property.

Neither is the plaintiff aided by the fact, that after the commencement of the suit he paid the Government for the land. He then became the owner of the land *as it then was*, with the timber cut; title to timber previously cut for illegal purposes did not pass.

Judgment and orders reversed, and cause remanded, with instructions to render judgment of nonsuit.

MORRISON, C. J., ROSS, J., and McKEE, J., concurred.

SHARPSTEIN, J., and THORNTON, J., dissented.