UNITED STATES *v.* MURPHY.

*(Circuit Court, W. D. Michigan, N. D    October 1, 1887.)*

1. PUBLIC LANDS—CUTTING TIMBER—HOMESTEADER'S RIGHTS.
    While holding land under a homestead entry, the homesteader can only cut and sell the timber from such portion or parts of the land as are being cleared for cultivation or settlement.[1]

2. SAME—CUTTING TIMBER—MISTAKEN VIEW OF RIGHTS.
    The fact that defendant was induced, through the wrong representations of the register of the land-office, to believe in the unrestricted right of the homesteader to cut timber from his entry, does not estop the government from prosecuting him for such unlawful cutting.

3. SAME—CUTTING TIMBER—CRIMINAL INTENT.
    . It is no defense to a prosecution for unlawful cutting of timber from public land that there was no criminal intent in the cutting.

4. SAME—ACTS RELATING TO — CONSTRUCTION OF, BY SECRETARY OF INTERIOR.
    The interpretation placed upon public land acts by the secretary of the interior is not binding upon the courts.

Criminal Prosecution for Trespass upon Government Lands, cutting and removing timber therefrom.    Motion for new trial.

*G. Chase Godwin*, Dist. Atty., for plaintiff.

*F. W. Clark* and *B. J. Brown*, for defendant.

JACKSON, J.    The defendant, having been indicted for cutting and removing timber from certain lands of the United States, contrary to the provisions of section 2461, Rev. St., was tried and convicted, and now moves for a new trial on the ground of certain alleged errors committed by the trial judge in the rejection of evidence offered by the defense,

[1] See note at end of case.

and in the instructions given to the jury as to the law applicable to the case.

There is no contest or controversy as to the material facts established by the evidence. It is conceded, as shown by the defendant's own testimony, that on the twenty-fifth of February, 1885, the defendant, as the agent and general superintendent of the Spalding Lumber Company, entered into a contract with one James Henderson, the occupant of a homestead entry located in Bagley township, Menominee county, Michigan, for the purchase of the *pine timber*, whether *standing* or *fallen*, on the entire homestead tract of 160 acres. By the terms of the contract, which was reduced to writing, the defendant's principal and its successor had the right "to enter upon said lands at its pleasure, and *cut, remove, and carry away* said timber, said timber to be cut and removed prior to April 1, 1888, without needless destruction of *other* merchantable timber;" the recited consideration was $200 paid to the vendor; that, under and in pursuance of said contract, the standing pine timber on said homestead land was subsequently cut and removed, by direction and under the superintendence of the defendant, and converted to the use and benefit of the Spalding Lumber Company; that the timber so purchased, cut, and removed by the defendant *averaged* about one pine tree to the acre, scattered over the entire homestead tract of 160 acres; that the defendant, before and at the time of purchasing, cutting, and removing said timber, knew the fact that the land from which it was taken was government land, and that the vendor, Henderson, had only a homestead right or entry in and to the premises on which the timber stood, and from which it was cut and removed.

It further appears that Henderson, who undertook to sell said timber, and confer upon defendant the authority to cut and remove it, first preempted this tract of land in the fall of 1882; that on the *thirteenth of October, 1883*, he changed his pre-emption to a homestead entry; that while occupying the land under his pre-emption entry he cleared about two acres, and built a small log cabin; that since the date of his pre-emption entry he has resided continuously on the land; that since changing to a homestead entry he has extended his clearing on the land, which amounted to eight or ten acres in February, 1885; that the timber cut and removed by defendant was not taken from the cleared and cultivated land, or from any portion in process of clearing; that while, in the preliminary negotiations for the purchase of the timber, the defendant had expressed the opinion that Henderson had the right to sell, or would get into no trouble by selling, if he would "put the money on the place," it was *no part of the contract of sale* that the proceeds of the timber should be applied in improving the homestead. Henderson, however, actually expended a portion of the money received from the sale of the timber, in making improvements on the land and the balance in supporting himself. His homestead entry was made, and the occupation of the land was continued, with the *bona fide* intention of completing his title according to the provisions of the laws; but he has not, in fact, yet perfected his entry and secured title to the land. Whether he

is in a position to do so does not appear from the record; nor is it material in the consideration of the questions presented by the pending motion.

The fact is clear and uncontroverted that, at the time defendant purchased, cut, and removed the pine timber on and from this homestead entry, the United States held, as they still hold, the title both to the land and to the trees standing thereon. The homesteader not having *then* so fulfilled his obligations under the law as to entitle him to a patent, the land was government land, and the timber was government timber. This was all known to the defendant when he bought the pine trees, and when he cut and removed, or caused or procured the same to be cut and removed, from the land, not for the use, benefit, and advantage of the land or homesteader, but for the Spalding Lumber Company. These facts and circumstances bring the defendant directly within the letter of the statute, (section 2461, Rev. St.,) and subject him to the penalties therein provided, unless he can bring himself within some recognized exception created by, or arising under, the homestead laws. The value of the timber so cut and removed being shown, the defendant's admitted acts, done with full knowledge, make out the case of the government, and the *onus probandi* rests upon him to extract the case from the penal consequences of an infraction of the law. What are the defenses relied on to do this?

In the first place, it is urged that congress, by the enactment of the pre-emption and homestead laws, has so far modified the provisions of section 2461, Rev. St., which embodies the act of March 2, 1831, that homesteaders occupying public lands under such laws may cut, sell, and use the timber thereon for the purposes of such occupation. This was so held in *U S. v. Nelson*, 5 Sawy. 68; and it is undoubtedly a correct proposition that section 2461, Rev. St., is to be construed in connection with the homestead laws, and that, in so far as the latter confer rights and privileges in respect to the use or sale of timber by the homesteader, its provisions are to be modified. Assuming then, as contended by his counsel, that the defendant is entitled to claim and rely upon all the rights which the homesteader, Henderson, had in, to, and over the timber cut and removed, we are brought directly up to the important question in the case as to what, under the law, are the rights of the homesteader in respect to timber standing upon the homestead land. How far, and to what extent, and under what conditions and restrictions, may he cut and remove the timber, or confer upon another lawful authority to cut and remove it, while occupying the land in good faith, and before perfecting his entry by the acquisition of the title?

It admits of no doubt that the settler on public lands, whether he secures a mere *right* of *occupancy*, like the Indian, or acquires an inceptive or inchoate right to the land in the nature of an estate on *conditions precedent*, such as the homestead laws confer, has *not* an unlimited or unrestricted power and authority of disposition over the timber standing upon his homestead entry, which is in fact only an application to purchase, giving the applicant no property in either the land or timber thereon,

until acquired by compliance with the requirements of the law. Pending this acquisition of the title, the homesteader is authorized (section 2288, Rev. St.) to transfer, by warranty against his own acts, any portion of his homestead for church, cemetery, or school purposes, or for right of way of railroads,—his conveyance, however, being worthless against the government if he should fail to perfect his claim, (9 C. L. O. p. 94;) but there is no provision of the statute expressly declaring to what extent he may sell or dispose of timber for purposes other than these. His entry is required to be for his "exclusive use and benefit," and for the purposes of actual *settlement and cultivation.* Section 2290. To effectuate and accomplish these objects of the law, judicial construction has clearly and liberally defined the homesteader's rights. By numerous decisions of the federal courts it is settled that his right of user and disposition over the timber is *qualified* by the nature and character of his interest in and possession of the land.

While in the occupation of the premises with the *"bona fide"* intention of completing his homestead, it is held that the homesteader may clear any portion of the land for the purpose of *cultivation* and settlement. In making clearing for these objects he may cut and remove the timber, and such portions of the timber so cut and removed from the clearings intended for cultivation or tillage as may not be needed on the place for the improvements thereon he may sell; but not further or otherwise. He may also use the timber in the erection of buildings necessary for the convenient occupation of the land, and its improvement; that is to say, better adapting it to convenient occupation. The timber may also be used for necessary and proper fencing and repairs. In other words, the homesteader may use or dispose of timber as an *incident* to his settlement, cultivation, and improvement of the land. He has only those rights in or over the property which are *necessary to the perfecting of his title.* His title can only be perfected by settling upon and improving the land for cultivation. For these purposes he may exercise ownership over the timber, but he is not allowed to sever the timber from the land for the purpose of sale and traffic. As held in the *Timber Cases,* 11 Fed. Rep. 81, "a settler on the public lands has no authority to *go outside* of the improvements, cut or sell timber, and thus denude the land, and destroy the value of the public domain, even though he intends to acquire the title under his claim." The authorities, which need not be commented on in detail, fully sustain and support this statement of the law, and the proposition above stated. *U. S.* v. *Cook,* 19 Wall. 591; *U. S.* v. *McEntee,* 23 Int. Rev. Rec. 368; *The Timber Cases,* 11 Fed. Rep. 81; *U. S.* v. *Stores,* 14 Fed. Rep. 824; *U. S.* v. *Williams,* 18 Fed. Rep. 478; *U. S.* v. *Lane,* 19 Fed. Rep. 910; *Bly* v. *U. S.,* 4 Dill. 465; and *U. S.* v. *Smith,* (U. S. Dist. Court Ark., April Term, 1882.)

In the instruction to special timber agents issued by the interior department, June 1, 1883, for the protection of timber on public lands, and which were in full force when Henderson took out his homestead entry October 13, 1883, the rights of homesteaders as *defined* and declared in these *decisions* were fully set forth, as follows, viz.:

"(7) Lands covered by homestead or pre-emption claims are lands upon which citizens of the United States have made entry, and have filed certain papers in the proper district land-office, obligating themselves to conform to the requirements of the law as to occupancy, cultivation, and improvement. (8) The claimant to any such land, provided he is living upon, cultivating, and improving the same in accordance with law, and the rules and regulations prescribed by this department, is permitted *to cut and remove, or cause to be cut and removed, from the portion thereof to be cleared for cultivation, so much timber as is actually necessary for that purpose, or for buildings, fences, and other improvements on the land entered.* (9) *In clearing for cultivation, should there be a surplus of timber over what is needed for the purpose above specified, he may sell or dispose of such surplus; but it is not allowable for him to denude the land of its timber for the purpose of sale or speculation until he has made final proof and acquired title.* (10) * * * (11) *No person other than the one making the entry has a right to cut timber from such land for any purpose whatever.*" "(33) Any person who fells or removes timber, or who hires others to fell or remove timber, or who incites or induces others to fell or remove timber, from government land, for his personal benefit or advantage, or for the purpose of speculation and gain, (except he has the right or permission so to do as specified under heads of 'Lands Covered by Homestead or Pre-emption Entry,' 'Rights of Railroad Companies,' and 'Mineral Lands,') is a timber trespasser upon the government land."

And upon the duplicate receiver's receipt furnished Henderson at the time of making his homestead entry there was indorsed in red ink a marginal note as follows:

"Timber land embraced in a homestead or other entry not consummated, may be cleared in order to cultivate the land, and improve the premises, but for *no other purpose.* If after clearing the land for cultivation, there remains more timber than is required for improvement, there is no objection to the settler disposing of the same. But the question whether the land is being cleared of its timber *for legitimate purposes* is a question *of fact* which is liable to be raised at any time. If the timber is cut and removed *for any other purpose,* it will be subject the entry to cancellation, and the person who cut it will be liable to civil suit for recovery of the value of the said timber, *and also to criminal prosecution,* under section 2461, Rev. St."

This direct notice to the homesteader, and the foregoing instructions to special timber agents, merely embodied what the courts had previously decided to be the rights of claimants under homestead entry. They were in no sense departmental constructions of the law, or regulations adopted independent of such decisions.

On the trial the defense asked leave to show that it was the general understanding among lumbermen in that section that the homesteader could sell the standing timber on the land if he applied the proceeds in the improvement of his homestead, and the support of himself while perfecting his entry; and, further, that this understanding had been derived from the register of that district, Mr. Cochran, who informed 'homesteaders, when they made their entries, that the ruling of the secretary of the interior on the subject of their rights to and authority over the timber on their homestead entries were broader and more enlarged than defined in said notice upon their receipt, and in said eighth and ninth instructions to special timber agents.

The ruling referred to was made on the *twenty-seventh November, 1883,* in the case of John W. Baird, who was reported for cutting and removing timber from certain unsurveyed lands in Washington Territory.   The special agent reported that Baird was a "squatter," and intending to make the claim his home, and, working in good faith to that end, supposed he had "a *right to clear off and sell the timber.*"   The commissioners recommended that no criminal proceedings should be entered against him, but that the case should be referred to the attorney general with request that the proper measures be taken to secure the timber in question, and dispose of it for the United States.   The secretary of the interior declined to accede to this suggestion, and in his letter to the commissioner expressed the opinion that, if Baird had taken the land in good faith, he was the owner thereof for all practicable purposes, although the title remained in the government.   And—

"If it appears that he has cut more timber than he was compelled to cut to *clear* up the land, he is not liable, either criminally or civilly, for doing so, if all the time he has the honest purpose of ultimately completing his title under the laws of the United States.   A jury, satisfied of that fact, would not, properly instructed by the court, find him guilty of trespass.   Whether he is or is not a trespasser does not depend on how many trees he cuts, but on the ' *bona fide* ' character of his settlement.   Baird was justified in doing whatever *clearing* was necessary to put in a crop, and he might cut and sell the timber to aid him in so doing, or *he might sell timber to support his family while* clearing his land and raising his crop, if during all that time, he had a ' *bona fide* ' settlement on the land," etc.

At the close of his letter the secretary says:

"Paragraphs 8 and 9 of instructions to special agents of the general land-office appointed to prevent timber depredations, relating to trespassers on lands covered by pre-emption and homestead claims, *should be revised* to conform with the views herein expressed."

It did not appear that any modifications of instructions 8 and 9, as above quoted, were ever actually promulgated as suggested by the secretary, and the trial judge refused to allow the defense to introduce the proposed evidence as to the understanding of lumbermen derived from the register who undertook to inform homesteaders of their rights to sell under the ruling in the *Baird Case.*

It is said that this ruling of the secretary, and the revision of instructions 8 and 9 therein suggested, has all the force and effect of law, inasmuch as by section 2478, Rev. St., the commissioner of the general land-office, under the direction of the secretary of the interior, is authorized to enforce and carry into execution any part of the public land laws not otherwise specially provided for.   Where a department of the government is authorized by statute to make regulations, such regulations, when made and promulgated, have the force of law; but authority "to enforce and carry laws into execution" does not confer authority to make regulations inconsistent with the provisions of the statute as construed and interpreted by the courts.   In respect to the ruling in the *Baird Case,* it is to be observed that all the circumstances of the case are not disclosed in the opinion.   It does not appear what was the character and extent

of the cutting, nor whether the timber was cut and removed from the land generally, or only from that portion of it which was being *cleared for cultivation and settlement.* It does appear that he was making a *clearing* with a *bona fide* intention of settling the land; and if, as is no doubt true, the timber cut and sold was taken from *that clearing,* the ruling of the secretary can be reconciled with the decision of the courts which define the homesteader's right. The defense, however, seek to give it a wider scope, and claim that it is a construction of the law giving the "*bona fide*" homesteader the right to cut and sell timber for the support of himself and family, without reference to any immediate clearing for cultivation, especially if he intends to apply the proceeds of sale in the improvement of his claim. The trial judge refused to recognize the binding force of that opinion, as thus construed. Did he commit an error in so doing? We think not. The secretary of the interior is not authorized, by the statutes relating to public lands and homestead entries, to make any regulations which would be in conflict with the law, or which would enlarge the rights of the homesteaders thereunder. Their rights are fixed and defined by the statute, which it is the province of the court to construe. The secretary can neither change the law, nor place upon it any construction which would be binding upon the courts. This is well settled. In *U. S.* v. *Dickson,* 15 Pet. 161, the treasury department had for more than 20 years placed a certain construction upon an act of congress. The supreme court declined to follow that construction. The court say:

"The construction so given by the treasury department to any law affecting its arrangements and concerns is certainly entitled to great respect. Still, however, if it is not in conformity to the true intendment and provisions of the law, it cannot be permitted to conclude the judgment of a court of justice. The construction given to the law by any department of the executive government is necessarily *ex parte,* without the benefit of an opposing argument in a suit where the very matter is in controversy; and, when the construction is once given, there is no opportunity to question or revise it by those who are most interested in it as officers, deriving their salary and emoluments therefrom, for they cannot bring the case to the test of a judicial decision. It is only when they are sued by the government for some supposed default or balance that they can assert their rights. But it is not to be forgotten that ours is a government of laws, and not of men; and that the judicial department has imposed upon it by the constitution the solemn duty to interpret the laws in the last resort; and however disagreeable that duty may be, in cases where its own judgment shall differ from that of other high functionaries, it is not at liberty to surrender or to waive it."

Any other rule than that here announced would subordinate the judicial to the executive department of the government. The cases cited and relied upon by the defense do not, when carefully examined, conflict with the principle as stated by the court in the case of *U. S.* v. *Dickson.*

If, then, the opinion of the secretary of the interior in the *Baird Case* was intended, as the defense contend, to enlarge the rights of homesteaders beyond what the courts had construed them to be under the law, the trial judge properly disregarded it as neither binding upon the court,

nor constituting any justification or defense, even if the defendant was led to rely upon it under information derived from the register. In *Whitesides* v. *U. S.*, 93 U. S. 257, it is said that—

"*Individuals as well as the courts must take notice of the extent of authority conferred by law upon a person acting in an official capacity, and the rule applies in such a case that ignorance of the law furnishes no excuse for any mistake or wrongful act.*"

It is urged that the action of the government officials in inducing the belief that the homesteader could dispose of the timber on his entry without restriction while occupying in good faith, and on which it is claimed the defendant relied in purchasing, and cutting and removing the pine trees, should *estop* the government from maintaining this prosecution. The rule stated in *Whitesides* v. *U. S.*, 93 U. S. 247, is a sufficient answer to this suggestion. There is no estoppel against the government in such cases. *Carr* v. *U. S.*, 98 U. S. 438. If the defendant has really been misled to his prejudice by wrong representations, or information communicated to him through the interior department, or its subordinate agents, that would present grounds for *executive clemency*, but would not constitute any legal defense for a wrongful act, prohibited by law.

It is next urged that there was no *criminal intent* in the defendant's acts. A sufficient answer to this is found in the fact that the *penalty under the statute is incurred without any criminal intent.* The timber was cut and removed from government land under no *mistake* or *accident.* There was no mistake in point of fact. The defendant, knowing all the facts, intended to do just what he did do. The only mistake, if there was any, was a mistake of law as to what he could lawfully do. In *U. S.* v. *Durton*, 6 McLean, 46, the defendant was allowed to show that he got over on government land and cut timber by *mistake*, supposing it belonged to his principal. He did *not intend* to cut *government* timber. But in the present case the defendant *intended* to cut just where he did cut, and the only ground on which he can defend or protect himself against the penalty imposed by the statute, is to show that he did this under lawful authority. No evidence was produced or offered tending to show any mistake made by defendant, such as would properly raise any question as to his *intent.* His taking legal advice, or consulting "lawyers before this, on some such subject,—not this particular one; some other such subject,"—does not, of course, constitute any defense, or negative the intent which the law imputed to him in doing the forbidden act, even if any criminal intent had to be shown. The trial judge, we think, properly held that—

"When, by the admission of the defendant himself, he knew that he was upon the land of the homesteader, and cut timber not in the clearing, or in the course of clearing, but from the tract generally, selecting that which was marketable, and removed it, that closes the case so far as the jury is concerned, and no evidence of good faith or of intent will be admissible."

The court also properly declined to charge the jury that, if the money obtained from the sale of the timber was used by the homesteader in the improvement of the homestead, he had a right to sell. The right to sell

was limited to *surplus* timber removed from clearing, or portions of the land in course of clearing, and not needed for the improvement of the place. We think the authority to sell, as construed by the decision cited, is restricted, substantially, as stated by the trial court, and that any other construction of the law would open the widest door to the spoliation of the public domain. The defense in this case, if sustained, would have the effect of enlarging the rights of homesteaders far beyond anything yet conceded them by the most liberal construction of the homestead laws.

It is not pretended that the timber in this case was sold and purchased, or cut and removed, with the view or for the purpose of *clearing* the land from which it was taken. It would have been ridiculous in the extreme to have claimed that an average of one or one and a half trees to the acre, scattered over 160 acres of timber land, was cut and removed as an incident to the clearing of the land for cultivation, or was intended as the initial or preliminary step in that direction. No evidence tending to support such a proposition was introduced or offered by the defense. The cutting and removing the timber was attempted to be justified or excused on other grounds which have already been considered.

We regard it the soundest interpretation of the homestead law, and most in harmony with the decided weight of authority, to hold that the sale of timber by the homesteader should be confined to that taken from such portion or parts of the land as are being cleared for cultivation or settlement. The sale, or cutting and removal, of timber from portions of the lands not cleared, or in course of clearing, *is not in the line of perfecting his title.* Under the provisions of section 2461, whoever cuts and removes timber from public lands—which include all that the government holds title to—must be prepared to show, when indicted or sued as a trespasser, lawful authority for his act. If he is a homesteader, he may show his occupation of the land under entry, and that the timber was cut and removed for the purpose of *clearing* the ground for cultivation, or for fencing, or for the erection or repair of necessary and convenient buildings. When he shows that the cutting was done for these purposes, which are germain and incidental to the improvement of his homestead in the way required by the law in order to perfect and complete his title, his defense is made out. But when he makes sale of timber scattered over the entire tract covered by his entry, not with a view or purpose of clearing the land for tillage, but to raise money for his support or other uses, his act is unlawful, and he subjects himself to the penalties provided by section 2461, Rev. St. Under the facts and circumstances disclosed in this case, the vendor, Henderson, had no authority to sell the pine timber bought by the defendant, and for cutting and removing that timber the defendant was properly found guilty, under instructions which contain no reversible error.

When analyzed, the substance of the defense is that the defendant did not violate the law as he construed it, or as he understood the officials of the interior department had construed it in declaring the rights of the homesteader, whose good faith would constitute or furnish a valid and

lawful excuse for *his* act in cutting and removing the timber. This is not a valid defense. The law reserves the title in the government until the homesteader proves up his claim and his patent issues. Before title is perfected, it prohibits the sale of any portion of the land, (or standing timber, which constitutes part of the realty,) except for church, cemetery, school, and railroad purposes. But while occupying in good faith, and while his title is inchoate, the law authorizes the homesteader to improve the land for purposes of settlement and cultivation, which includes clearing for tillage, fencing, and the erection of convenient buildings; and, as an incident to such clearing, he may cut and sell so much of the timber taken from the cleared tract as is not needed for other legitimate purposes on the land. This incidental power of disposition extends only to *surplus* timber cut and removed from so much of the tract as is cleared, or in process of clearing, for cultivation.

The case has so far been considered upon the assumption that the defendant, by and under his purchase, had the *same* right to cut and remove timber that the homesteader himself possessed. In what has been said it is not intended to admit or concede this proposition, for the homesteader's entry is required to be made for his "*exclusive* use and benefit," for the purpose of settlement and cultivation; and he is forbidden to alienate *any portion* of his claim, except for church, cemetery, school, and railroad purposes. Rights and privileges which were intended or conferred for the homesteader's *personal and* exclusive benefit and advantage, to enable him to comply with the obligations, requirements, and general policy of the law in settling, improving, and cultivating the land, so as to complete and perfect his title thereto, (until which time he is forbidden to alienate except for certain purposes,) can hardly be the subject of lawful purchase by others. The eleventh and thirty-third instructions to special agents, above quoted, seem to embody a correct statement of the law on this question. So that, in any view that can be taken of this case, the defendant's act in causing the timber to be cut and removed from the public land in question was a trespass, for which he was properly convicted; there being no reversible error in the rulings of the trial judge upon the law and evidence.

The motion for new trial is accordingly overruled and disallowed.

SAGE and SEVERENS, JJ., concur.

### NOTE.

PUBLIC LANDS — CUTTING TIMBER ON. One who enters upon public land in good faith for the purpose of securing title by pre-emption, or of claiming a homestead therein, may cut so much timber standing on the land as is necessary for cultivation, and the timber so cut he may dispose of to the best advantage possible; but he cannot go outside of his improvements to cut and sell timber, though he intend to acquire title under his claim. The Timber Cases, 11 Fed. Rep. 81; U. S. v. Lane, 19 Fed. Rep. 910; U. S. v. Williams, 18 Fed. Rep. 475. See, also, U. S. v. Smith, 11 Fed. Rep. 487. But where a settler is acting in good faith he may, for the purpose of improvement, cut timber even before he files his entry in the land office. U. S. v. Yoder, 18 Fed. Rep. 372. And where a settler on public lands has removed timber for other than the purpose of tillage, a subsequent issuance of the certificate of the register and receiver of the land-office to such settler, stating that he has complied with the law in making settlement, will relieve him from liability for such wrongful cutting. U. S. v. Ball, 31

Fed. Rep. 667. So a settler, who, pending an action for the recovery of the value of timber which he has wrongfully cut and sold to defendants, becomes entitled to the issuance of the patent to the land by the payment of the purchase money in full, thereby defeats the right of the plaintiff to recover, such action of the settler in securing an equitable title being held to relate back to the original entry. U. S. v. Stores, 14 Fed. Rep. 824.

MEASURE OF DAMAGES. In case a trespass upon public lands consisting in the wrongful cutting of timber thereon is inadvertent, the measure of damages is the value of the timber in the trees; but in case the trespass is willful, the measure of damages is the value of the property at the time the action is brought, with no deduction for the labor put forth and the expense incurred by the trespasser. U. S. v. Williams, 18 Fed. Rep. 475. And an innocent purchaser from a willful trespasser is liable for the full value of the timber at the time of the purchase. U. S. v. Heilner, 26 Fed. Rep. 80.