## CONWAY v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.   June 19, 1899.)

No. 1,077.

**1. PUBLIC LANDS—RIGHTS OF HOMESTEAD SETTLER—SALE OF TIMBER.**

In an action by the United States to recover the value of timber alleged to have been wrongfully cut from the public lands, an answer alleging that defendant purchased the timber from one who had entered the land in good faith under the homestead law, and was proceeding in good faith to fit the same for pasturage and cultivation; that the character of the land was such as to render it expedient, proper, and necessary to remove the timber for that purpose; that the homesteader, by reason of his age and poverty, was unable to do the clearing, and for that reason and in good faith made a contract with defendant by which the latter purchased the timber for $800, agreeing to remove the same and to expend the money in a house and buildings on the land, in breaking such land as could be cultivated, and in furnishing the settler with stock and provisions, which agreement had been carried out in good faith by defendant,—alleges sufficient facts to constitute a defense.

**2. PLEADING - SUFFICIENCY OF DENIAL.**

In an action for unliquidated damages a general denial in the answer, together with a special denial that plaintiff has been damaged in the amount claimed, is sufficient to put the plaintiff upon his proof as to damages.

In Error to the District Court of the United States for the District of Minnesota.

This is an action at law instituted by the United States of America, the defendant in error, against Hugh Conway, the plaintiff in error, to recover the value of certain pine logs alleged to have been by him unlawfully cut and removed from certain lands belonging to the United States. It is averred in the petition that said logs contained 336,230 feet, board measure, and were and are of the value of $1,681.15, all of which said logs, it is alleged, the defendant did then and there convert and dispose of to his own use, to the damage of the plaintiff in the sum of $1,681.15, together with interest accrued thereon. The answer filed by the defendant consists of a general denial, with a special denial that the plaintiff has been injured or damaged in the sum of $1,681.15, or in any sum whatsoever. By way of pleading an affirmative defense, the answer contains averments in substance as follows: That on the 25th day of May, 1895, one Currer Boyington, with a bona fide intention of acquiring title to the lands described in the petition under the homestead laws of the United States, duly filed his application to enter said lands as a homestead, and that the application so made by him was accepted by the local land officers in the state of Minnesota, where the lands were situated; that afterwards, in August, 1895, Boyington commenced his residence on the lands, and has ever since resided and now resides thereon; that shortly before so commencing his residence he built a small log house, and in the month of November, 1895, there was growing on the lands scattered timber, a large portion of which was and had been damaged by fire; that it was necessary to cut the same in order to realize therefrom, and save the timber from becoming a total loss by reason of decay; that a large portion of the land was fit principally for pasturage and meadow lands, and that it was expedient, proper, and necessary, in order to cultivate and improve said lands, to cut and remove the scattered and burned timber, so that the lands might be prepared for pasturage and cultivation; that in the month of November, 1895, Boyington and the defendant, Conway, entered into a contract, by the terms of which Boyington, for the purpose of clearing and cultivating said lands, covenanted and agreed to sell to Conway the scattered and burned timber thereon for the sum of $800, to be paid for in the following manner: Conway was to erect and construct a frame dwelling house on the lands for Boyington, and such other buildings as he should desire thereon, and also to break for Boyington such portions of the lands as could be cultivated, and also to furnish Boyington with sufficient

money to purchase stock to stock said lands, and to furnish him provisions sufficient to keep himself and his hired man until he should have, in the several ways specified, paid to Boyington the total of said $800. It is further averred in the answer that Conway, pursuant to said contract, erected at a cost of $330 a dwelling house and other buildings on the lands, and also furnished Boyington the provisions required by the contract, and the money with which to purchase stock, according to the requirements of the contract; that, during the season of 1896, Conway, in further execution of his contract, broke 5 acres of said lands for Boyington, which he (Boyington) cultivated by planting and raising a crop of potatoes, cabbages, beans, onions, and corn thereon, and that Boyington during the season of 1896 cut about 10 acres of hay therefrom; that in the spring of 1896 Boyington dug a ditch of considerable length for the purpose of draining part of the lands, and cleared about 50 acres of the lands from which Conway had cut the pine logs, and sowed the same with grass seed. It is further alleged in the answer that, by reason of the roots of the trees in the ground from which the timber was cut, it was impossible during the same season to break up the lands, and that it will be impracticable to do so until the stumps and roots have rotted; that the only practical way of cultivating and improving such lands upon which timber had been growing is to seed the same and pasture it for several years, and during that time to allow the stumps to rot so that they can be easily extracted and the land plowed; that Boyington has cultivated the lands from which timber was cut as fast as stump extraction and clearing the same would allow; that up to the present time the defendant Conway has in good faith kept his contract with Boyington, and performed all the conditions thereof; that Boyington has on said lands 6 head of cattle, 2 hogs, and 23 chickens. It is further alleged in the answer in words and figures as follows: "That the said Boyington is a single man over sixty years of age, and at the time he made the contract with defendant, Conway, had no means with which to improve said lands, and it was necessary and essential that he, in order to cultivate and improve the same, should make a contract similar to the one made with the said Conway; that the said Boyington has acted in perfect good faith in entering and residing upon said lands and in making said contract, with the honest intention of improving said lands and making the same fit for a stock farm, and to cultivate the same to such an extent as is practicable; that all the cutting of timber and logs done on said lands by the defendant, Hugh Conway, was done under said contract made with said Boyington, and that he did so in perfect good faith, believing, as he still believes, that the said Boyington was acting in good faith as a homesteader, and was clearing said lands for the purpose of cultivation." To this answer a reply was filed by the plaintiff, denying each and every allegation of the answer, except such as were admitted or qualified in the petition, and thereafter in the reply so filed. It is subsequently averred in the reply as follows: "That said Conway erected certain buildings on said land, but plaintiff, on information and belief, alleges the fact to be that said Conway, under said contract, agreed to pay for said logs and timber in cash, and that the buildings so erected were erected by said Conway for his own use and convenience while cutting and removing the logs from said lands and from other lands, and not for the purpose of improving said land." Still further replying, the plaintiff alleges "that all of the material used in the construction of said buildings was cut upon the land in the complaint described, and that none of the material used in the construction of said building constituted any part of the timber for the recovery of the value of which this action is brought; that the value of said building, and the cost of the construction thereof, did not exceed the sum of $175." Such were the pleadings in the case, and when it was brought on for trial the plaintiff moved for judgment on the pleadings. This motion was sustained by the court below, and judgment was rendered in favor of the plaintiff for $1,853.77; the same being the $1,681.15 mentioned in the petition, with interest thereon from the 1st day of April, 1896, as prayed for by the plaintiff. In due course a writ of error was sued out by the defendant, and the case brought to this court.

John Jenswold, Jr., for plaintiff in error.

Robert G. Evans, for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and ADAMS, District Judge.

ADAMS, District Judge, after stating the case as above, delivered the opinion of the court.

Several errors are assigned, but they appear to be comprehended in two of them, namely: First, that the court erred in holding that the answer of the defendant, Conway, did not set forth a defense; and, second, that the court erred in holding that upon the pleadings the plaintiff was entitled to a judgment for $1,853.77.

The test of the sufficiency of the answer must be found in a consideration of the rights of Boyington, under whom the defendant was acting, and of the rights acquired by, and obligations imposed upon, Conway, by the contract alleged to have been entered into between him and Boyington. It appears that Boyington had duly entered the lands from which the logs were taken, under the homestead laws of the United States, and was in the year 1896 residing on said lands, and engaged generally in performing such acts as were required to ripen his entry into a patent. It is a well-settled construction of the homestead statute that while a settler acquires no title to the lands entered by him until the issue of the patent, at the expiration of five years after the entry, he has nevertheless a right during these five years to treat the lands as his own, in a certain qualified sense,—to the extent, at least, of performing those acts which are required under the law to entitle him to a patent therefor. He must reside and continue to reside upon the lands entered, and cultivate and continue to cultivate the same for a period of five years. To perform these conditions necessary to the acquisition of title, he clearly has the right to utilize the timber growing upon the land for the purpose of building himself a house to live in, and such outhouses and fences as may be reasonably necessary for his initial and progressive farming operations. He may also, and must, in the performance of the condition of cultivation, first prepare the land therefor. If there be growing trees or dead timber, which are impediments to successful husbandry, he may clearly remove the same, or cause them to be removed, so far as the legitimate purpose of cultivation reasonably warrants; and he may, subject to such limitations, sell the same, and appropriate the money realized therefrom. While a settler may avail himself of these necessary privileges, he must at all times act in good faith in the exercise of them. He cannot invoke or pretend to exercise them as a cover to despoil the lands of their timber, or to make profit out of them, without regard to the legitimate purpose of building him a home, outbuildings, and fences, and fitting the soil for cultivation and use. Shiver v. U. S., 159 U. S. 491, 16 Sup. Ct. 54; The Timber Cases, 11 Fed. 81; U. S. v. Yoder, 18 Fed. 372; U. S. v. Lane, 19 Fed. 910; U. S. v. Ball, 31 Fed. 667; U. S. v. Murphy, 32 Fed. 376; U. S. v. Nelson, 5 Sawy. 68, Fed. Cas. No. 15,864. In the case of Shiver v. U. S., supra, the supreme court remarks as follows:

"With respect to the standing timber, his [the settler's] privileges are analogous to those of a tenant for life or years."

Quoting from Washburn, in his work on Real Property, the court, referring to lands which are new and covered with forests, and which cannot be cultivated until cleared of the timber, continues as follows:

"In such case it seems to be lawful for the tenant to clear the land, if it would be in conformity with good husbandry to do so; the question depending upon the custom of farmers, the situation of the country, and the value of the timber. * * * By analogy, we think that the settler upon a homestead may cut such timber as is necessary to clear the land for cultivation, or to build him a house, outbuildings, and fences, and perhaps, as indicated in the charge of the court below, to exchange such timber for lumber to be devoted to the same purposes, but not to sell the same for money, except so far as the timber may have been cut for the purpose of cultivation. * * * A reasonable construction of the statute,—a construction consonant both with the protection of the property of the government in the land and of the rights of the settler,—we think, restricts him to the use of the timber actually cut, or to the lumber exchanged for such timber, and used for his improvements, and to such as is necessarily cut in clearing the land for cultivation."

Such being the principles controlling the rights of a settler under the homestead act, it now becomes necessary to analyze the defendant's answer, and see if the facts there disclosed exonerate him or Boyington, under whom he was acting, from liability for cutting the logs in question. The answer, as hereinbefore substantially set out, contains much unnecessary narration, and some statements are found in it possibly suggestive of facts which may be evoked at a trial in disproof of the defense sought to be pleaded; but we have reached the conclusion that there are averments found in the answer, which, if true, constitute a defense. It is alleged that the character of the lands from which the logs were cut was such as to render it expedient, proper, and necessary, and therefore a part of good husbandry, to remove the scattered timber in order to fit the land for pasturage and cultivation, alleged to have been the purpose of the settler in making his entry. It is further alleged that Boyington was unable, by reason of his age and poverty, to do the necessary clearing, and for that reason made a contract with Conway to clear the same; agreeing to give him the timber to be cut from said land, provided Conway would erect a frame dwelling house and other buildings thereon for Boyington, break such portions of the land as could be cultivated, furnish Boyington money for the purchase of the requisite stock to outfit his farm, and furnish Boyington with provisions sufficient to keep him and his hired man, to the extent, all told, of the value of $800. In other words, Conway was to pay $800 for the timber, and make payment thereof in doing the work and furnishing the money and provisions for the purpose just specified. It is further alleged that Conway performed the terms of his contract, and particularly alleged that Boyington, in making the contract, acted in good faith, with the honest intention of thereby improving the lands and making the same fit for a stock farm and for cultivation, to such an extent as was practicable, and that Conway, in the performance of his part of the contract, acted in good faith, believing that Boyington was clearing the lands in good faith for the purpose of cultivation. These averments, in our opinion, are the equivalent of saying that the timber was caused to be cut by the settler in order to fit and prepare the land for culti-

vation. If these averments are true,—and we must so treat them for the purposes of this case,—and if the defendant was engaged in doing the work of clearing in good faith, for the purpose of preparing the land for cultivation, then, even though the settler was to receive in money the value of the timber so cut, the act would be justifiable, under the law, and the person employed to do it would not be liable to the United States therefor. As has been frequently expressed in judicial utterances found in the cases above cited, the question is one of good faith on the part of the settler. The cutting, to be justifiable, must be fairly and reasonably an incident to real cultivation and improvement, as distinguished from a denuding of the land of its timber merely for the purpose of selling the timber and securing the purchase price. The portion of the answer already considered was intended to state a complete defense or a bar to the cause of action, but there is another feature of the answer which sets forth, in our opinion, a partial defense. That is the portion of the answer averring that Conway was to employ and did employ the timber cut, either directly or indirectly, in erecting a dwelling house and necessary outbuildings for the settler. To the extent to which the logs cut went into the construction of such dwelling house and outbuildings, under the authorities already cited, or to the extent to which the money received for the logs was in good faith employed to construct a dwelling house and outbuildings, there could be no recovery in this case.

The construction which we have placed upon the answer of Conway seems to be the same as that given it by the plaintiff in the case below. Its replication apparently concedes that the defendant had stated a valid defense, but by its general denial and affirmative averments it challenges the good faith of the alleged cultivation, and denies the alleged use of timber cut for outfitting the lands with requisite buildings for farming operations.

We are also of the opinion that the amount of the plaintiff's damages was fairly put in issue by the pleadings. Defendant not only denied, in and by his general denial, the allegation that the logs cut were of the value of $1,681.15, but he specially denied that plaintiff had been damaged in the amount claimed by it. Under the authority of the cases of Stone v. Quaal, 36 Minn. 46, 29 N. W. 326, Nunnemacker v. Johnson, 38 Minn. 390, 38 N. W. 351, and Bank v. White, 38 Minn. 471, 38 N. W. 361, this pleading put the plaintiff upon its proof of damages. It results that the judgment must be reversed, and the cause remanded for a new trial, and it is so ordered.