ROSADO, PLAINTIFF AND APPELLANT, *v.* PONCE RAILWAY AND LIGHT COMPANY, DEFENDANT AND RESPONDENT.

APPEAL from the District Court of Ponce in an action for damages.

No. 951.—Decided June 9, 1914.

LAW OF THE CASE—NEW TRIAL—QUESTIONS OF FACT AND OF LAW.—The doctrine of the law of the case consisting in that what has been decided by the appellate court is obligatory upon the lower court in a new trial and upon the appellate court in a second appeal, is applicable to questions of law, but not to questions of fact.

EVIDENCE—PREPONDERANCE OF EVIDENCE—FINDINGS OF TRIAL COURT.—A preponderance of the evidence does not consist in the mere numerical majority of the witnesses of one of the parties, but in the weight, credit, and value given by the court to the whole of the evidence introduced by each party.  However, if the witnesses are of equal honesty, candor, intelligence and veracity and are corroboratel equally well by the remaining testimony and are equally disinterested in the suit, then the greater number will determine the preponderance.  *Wilcox* v. *Hines,* 100 Tenn., 542.  In questions of this nature the weighing of the evidence by the lower court will be sustained unless it is. shown clearly to be erroneous.

ID.—WITNESSES—FAVORABLE AND ADVERSE TESTIMONY.—The fact that the same witnesses of one party testified to details of an accident both favorable and adverse to the case of the party introducing them, does not imply necessarily that they are not worthy of belief.  On the contrary, this fact may be taken rather as demonstrative of the veracity of their testimony on both points.

ELECTRICITY—VOLTAGE NECESSARY TO CAUSE DEATH—ERROR OF TRIAL COURT.—Although it is true that there is no fixed rule as to the number of volts: necessary to cause a person's death, it may be said that the number must be more than 110, which is generally considered harmless.  When an electric current violently lifts a strong man and throws him against the balcony of a house adjoining the one in front of which he was standing, inflicting severe shocks and producing deep burns in nearly every part of his body and, ultimately, death, there is no doubt that the said electric current ·was of more than 110 volts and, therefore, of greater intensity than that usually transmitted for the purpose of furnishing light to residences, and in failing so to find the lower court committed error.

NEGLIGENCE—RES IPSA LOQUITUR—ONUS PROBANDI.—Applying the doctrine of *res ipsa, loquitur* to the present case, it must be concluded that the death under consideration was caused by the fact that the defendant allowed certain wires ordinarily carrying a current of 110 volts to transmit a greater voltage capable of causing death, and that the burden is on the defendant to prove that it was not negligent in so doing.

CONTRIBUTORY NEGLIGENCE—LINEMAN—INSTRUCTIONS BY MANAGER.—General instructions given by the manager of a telephone company to his employes that they should bear in mind that all electric wires are dangerous, are not alone sufficient to make one of said employes who was charged with repairing the line guilty of contributory negligence, if in handling a wire he had sufficient reasons to believe that it was not dangerous.

ID.—ONUS PROBANDI.—The contributory negligence of the plaintiff is a defense which must be pleaded and proved by the defendant.

ID.—KNOWN DANGER.—In order to charge a person who risks a danger with contributory negligence, it must be shown that he did so knowingly or was wilfully and unnecessarily negligent in not knowing of it, but said negligence cannot be imputed to a person because he did not inquire into the danger if the circumstances of the case show that he had no reason to believe that such danger existed.

EXPERIENCED WORKMAN—ORDINARY WORKMAN.—The obligation which the law imposes upon an experienced workman in cases of accident is different from that which it imposes upon an ordinary workman.

PROXIMATE CAUSE—ELECTRIC WIRES ABANDONED FOR YEARS AND TRANSMITTING A DEADLY CURRENT.—In view of the circumstances of this case and of the evidence introduced, it was held that the action of the defendant company in unnecessarily leaving the electric wires connected with the house where the accident occurred for more than seven years without taking care to insulate them and in such condition that, instead of carrying a harmless current like others of the same class, they transmitted a deadly current, constitutes the real proximate and immediate cause of the injury for which the indemnity is sought.

APPEAL—REVERSAL OF JUDGMENT—JUDGMENT—DAMAGES—DENIAL OF DAMAGES CLAIMED—DAMAGES FIXED BY APPELLATE COURT.—When, as in this case, the judgment appealed from is reversed and the defendant in his answer had only denied "the extent and amount of the damages alleged to have been suffered by the plaintiff," such denial is sufficient, and this court in rendering a new judgment in favor of the plaintiff can fix the amount which it deems fair and is not obliged to accept the amount claimed in the complaint.

ID.—JUDGMENT—AMOUNT OF INDEMNITY.—The evidence showing that the deceased person in this case was a strong, sober, intelligent, and active man of twenty-two years of age, who provided for the maintenance and support of his family with his earnings of one dollar daily, and that at his death he left two young daughters who depended upon him for their support, the court found that the defendant should pay an indemnity of $3,000 to the said children, together with the costs, disbursements, and attorney's fees.

The facts are stated in the opinion.

*Mr. José Poventud* for the appellant.

*Messrs. Hartzell & Rodríguez Serra* for the respondent.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is an appeal from a judgment of the District Court of Ponce rendered in an action for damages.

The complaint was filed on March 6, 1911, and answered on April 15 of the same year. A day having been set for the trial, both parties appeared and after the evidence of the plaintiff had been heard the defendant moved for a nonsuit on the ground that the evidence introduced was insufficient to sustain the allegations of the complaint. The motion was sustained and on August 11, 1911, judgment was rendered dismissing the complaint. The plaintiff thereupon appealed to this court and on June 25, 1912, a decision was rendered reversing the judgment appealed from and remanding the case to the trial court with instructions to hold another trial to be conducted in accordance with the opinion delivered.

*Rosado* v. *Ponce Railway and Light Company,* 18 P. R. R., 593.

The case having been remanded to the District Court of Ponce, a new trial was held on October 4, 1912. Both parties agreed that the evidence introduced at the former trial should be reproduced and it was read from the record prepared for the first appeal. Both parties then introduced and examined further evidence and the case was terminated by a judgment rendered and entered on October 7, 1912. From the said judgment, which again dismissed the complaint, the plaintiff took the present appeal.

The first question to be considered in this appeal is that of the exact situation in which the court below found itself in again weighing the evidence introduced and applying the law, for the appellant repeatedly insists in her brief that in its findings of fact the said court violated the law of the case established by this court in its decision of June 25, 1912.

The rule applicable for determining the said situation is clearly laid down by the Supreme Court of California in the case of *Wallace* v. *Sisson,* 114 Cal., 43, in which the court expressed itself as follows:

"Upon a former trial of this case the court made findings of fact, and rendered judgment thereon in favor of the defendants. This judgment and an order denying the plaintiff's motion for a new trial were subsequently reversed by this court upon the ground that certain findings of fact were not justified by the evidence. (*Wallace* v. *Sisson,* 33 Pac. Rep., 496.) Upon the second trial of the cause the court made similar findings of fact, and again rendered judgment in favor of the defendants. From this judgment and an order denying a new trial the plaintiffs have appealed. It was contended by the plaintiffs at the trial, and is also contended by them here, that the evidence is substantially the same as upon the former trial, and that the former decision of this court that this evidence was insufficient to justify the findings then under consideration became the law of the case, and that the trial court was thereby precluded from making the present findings, although its own judgment concerning the effect of this evidence might be contrary to the decision

of this court. Both of these propositions are controverted by the defendants.

"An unbroken line of decisions, commencing with *Dewey* v. *Gray,* 2 Cal., 374, has established the rule in this state that a decision of this court upon any question of law in a case appealed to it from an inferior court becomes thereby the law of that case, and is thereafter in all subsequent stages of the case binding, not only upon the inferior court, but also upon this court, if again brought before it. It has never been held, however, that the decisions of this court upon a question of fact is subject to this rule. On the contrary, it has been frequently said that the rule is limited to questions of law, and is not applicable to questions of fact."

In view of the foregoing doctrine, let us consider the findings of fact of the District Court of Ponce which served as a basis for the judgment appealed from, which, copied literally, read as follows:

"*First.* The court finds that Petra Rosado y Correa was lawfully married to Ramón Rodríguez Vázquez, now deceased; that they are the parents of the minor, María Luisa Rodríguez y Rosado, who is likewise the heir of Ramón Rodríguez Vázquez together with her minor sister, who was unborn at the time of her father's death and also at the date of the filing of the complaint which is the origin of this suit.

"*Second.* The court finds that Ramón Rodríguez Vázquez was a man twenty-two years of age, of strong and healthy constitution, sober, intelligent and industrious, who took care of and supported his family by his earnings of one dollar daily which he received for a period of nearly two years from the South Porto Rico Telephone Company of the city of Ponce, and that his said family, consisting of his wife and daughter, depended exclusively upon him for their support.

"*Third.* The court finds that on October 11, 1910, on Royal Street, or the highway running to the port of Ponce, in front of house No. 28 of said street, there were two electric wires connecting the said house with the general wire furnishing electric current to light the private residences; that said two wires thus connecting said house had an electric current of an intensity which has not been proved to be greater than 110 volts; that the intensity of the current usually passing over the wires furnishing light to private residences is 110 volts; that the intensity of the current passing over the main

wires before entering the transformers or apparatus for reducing the intensity of the electric current, of which there are two large ones installed in the Playa ward, is of 2,220 volts; that the current passing over the uncovered wire furnishing electric motive power to the trolley line is of an intensity of from 500 to 550 volts, the said wire being strung under the electric wires of the main line which furnish current to those which form the connection with the said house No. 28.

"*Fourth.* The court finds that on the said 11th day of October, 1910, at about 1 p. m., and on said Royal Street, or highway to the port, in front of said house No. 28, which is of one story, Ramón Rodríguez Vázquez, who was stringing a telephone line as an employee of the South Porto Rico Telephone Company, caught a telephone wire which was hanging down towards the street and after rolling it up threw it over the two electric wires forming the connection with said house and upon catching it again on the other side of said two wires with one hand and pulling thereon with both hands, he was violently lifted and thrown against the balcony of the house adjoining house No. 28, or house No. 26, receiving several severe shocks in his body, he having held the wire in his hand for about five minutes because he could not let it go, and the persons who went to his aid found great difficulty in loosening his grasp from the wire.

"*Fifth.* The court finds that the telephone wire which Ramón Rodríguez Vázquez had in his hands at the time the accident occurred and to which the foregoing finding refers, was in contact with the electric wires connecting house No. 28 and that by reason of said contact an electric current of an intensity of 110 volts was transmitted to said wire and communicated to the body of said Ramón Rodríguez Vázquez, producing burns on both his hands which caused the formation of *emboli* from which a general paralysis gradually supervened and occasioned his death in the following month of November, 1910.

"*Sixth.* The court finds that before noon of October 11, 1910, it had been raining in Royal Street, or the highway to the port, on which are located the office of the defendant company and house No. 28, in front of which the accident to Ramón Rodríguez Vázquez occurred, and as a consequence the court finds that the ground on which Ramón Rodríguez Vázquez was standing when the accident occurred was damp.

"*Seventh.* The court finds that by reason of the dampness of the ground on which Ramón Rodríguez Vázquez was standing the number of ohms constituting the power of resistance offered by his body to the passing of the electric current was reduced and that therefore

the conductibility of his body was increased, rendering him sensitive to the effects of the electric current, and that under such conditions the current of 110 volts transmitted to his body by reason of its greater conductibility caused the wire to adhere to his body instantly in such a manner that he could not detach himself therefrom and it was difficult for those who went to his aid to disengage him, for which reason the wire remained adhered to him for at least five minutes, during which time the current of 110 volts which circulated through his body produced the burns which were the cause of the complications which resulted in his death.

"*Eighth.* The court finds that it was not proven in any manner that besides the contact of the wires forming the connection with house No. 28 with the telephone wire which Ramón Rodríguez Vázquez threw over the other wires there had been established any other contact between the said connecting wires and any other wire strung in that place belonging to the defendant company.

"*Ninth.* The court finds that the wires connected with house No. 28 Royal Street, or the highway to the port of Ponce, were protected by insulating matter of an unknown nature which was imperfect in some places, it being observable from a close view that it was stripped off in places for two or three inches. These imperfect places could be seen from the street and appeared to be about one inch long, it being only necessary to look at the wires a little carefully to discover this.

"*Tenth.* The court finds that Ramón Rodríguez Vázquez received express personal instructions from the manager of the company which employed him, the South Porto Rico Telephone Company, to the effect that he should treat and consider as dangerous all the electric wires he came in contact with in his work as lineman or employee of the said company and regard all the conducting wires as if they were uncovered; that he should always use long ropes for tightening the telephone wires safely in every case in which he had to string them over the electric wires; that he should use boards to stand on to avoid contact with the ground; that he should use safety belts and any other implements which the occasion might require and call for the assistance of other employees when necessary. And the court finds also that the telephone company always kept at the disposal of Ramón Rodríguez Vázquez and the other employees all the tools and implements necessary for the proper performance of the work.

"*Eleventh.* The court finds that Ramón Rodríguez Vázquez absolutely failed to follow the express instructions which he received from the telephone company in attempting to string the wire at the time

when the accident occurred because the court finds that said Ramón Rodríguez did not use any rope to stretch the telephone wire or boards for insulating himself and it has not been proved that he called for assistance from the other employees in the performance of his work.

"*Twelfth.* The court finds that Ramón Rodríguez Vázquez was aware of the danger connected with wires carrying electric currents; that he did not exercise the proper care and diligence in the performance of his duties which should be employed by every person who works in a dangerous place with knowledge of the danger; that he did not even exercise the care and diligence of a person of ordinary prudence, and that he failed to take the precautions which the nature of such work demanded and which he was required to take in order to avoid danger.

"*Thirteenth.* The court finds that Ramón Rodríguez Vázquez was guilty of contributory negligence and that this was the proximate and immediate cause of the injuries he received.

"*Fourteenth.* The court finds that the electric wires which were connected with house No. 28 Royal Street did not furnish an electric current to the said house; that the said wires had been connected with said house for seven years without supplying any electric current; that the said wires were not properly insulated, and also that a person walking along the street could not come in contact with the said wires.

"*Fifteenth.* The court finds that the defendant company is guilty of negligence of a remote character.

"*Sixteenth.* The court finds that it was not proven that the defendant company was aware of the negligent acts of Ramón Rodríguez Vázquez prior to the time when he received the injuries, and therefore that it was not proven that the defendant company had an opportunity by the exercise of care and diligence to avoid the consequences of the negligence of the said Ramón Rodríguez Vázquez."

I. The first and second findings are accepted by the appellant and, in our opinion, conform strictly to the evidence introduced.

II. The date of the accident fixed by the lower court in its third, fourth and sixth findings is October 11, 1910. The appellant contends that the preponderance of the evidence shows that the accident occurred on October 10, 1910. All the witnesses for the plaintiff who testified on this point refer to October 10, 1910, as the date on which the accident occurred

which originated this suit, and the said date was accepted by the lower court in its first findings of fact and by this court in its decision of June 25, 1912. During the new trial the defendant offered in evidence the testimony of witnesses Palmer and Tous Soto to show that the accident occurred on October 11 and not on October 10. Palmer, who was an employee of the telephone company by which Ramón Rodríguez was employed, testified in substance that on the date on which the accident occurred he wrote a letter to Tous Soto, which letter he identified at the trial, enclosing some reports about the accident. Attorney Tous Soto testified in substance that he became advised of the accident by the letter which he received from Palmer requesting him to investigate the case and that he went to the hospital immediately where the injured man was and spoke to him about the accident which had happened to him that very day. Finally, refreshing his memory by referring to the letter, he fixed the date of the accident as October 11, 1910.

The evidence, then, proved to be contradictory, and although it is true that a greater number of the witnesses testified that the accident occurred on October 10, 1910, this does not imply necessarily that the preponderance of the evidence shows that said date is the correct date.

"By the term preponderance of evidence," said the Supreme Court of Tennessee, "is not meant the mere numerical array of witnesses, but it means the weight, credit, and value of the aggregate evidence on either side. If, however, the witnesses are of equal fairness, candor, intelligence, and truthfulness, equally well corroborated by the remaining testimony, and are equally free from interest in the suit, then the preponderance is shown by the number of witnesses." *Willcox* v. *Hines,* 100 Tenn., 524, 66 Am. St. Rep., 761.

This doctrine is sanctioned by the law in force in Porto Rico. The second paragraph of section 162 of the Law of Evidence reads as follows:

"The court or jury is not bound to decide in conformity with the declarations of any number of witnesses, which do not produce conviction in its mind, against a less number or against a presumption or other evidence satisfying its mind."

In the case at bar the trial court considered the greater weight of evidence to be on the side of the defendant and although we may have some doubts as to its conclusion, we must accept the same as just and proper in the absence of an actual showing that it was influenced by passion, prejudice, or partiality or that it committed a clear and manifest error.

III. The appellant contends that the trial court erred in finding that it rained on the date and at the place of the accident and that therefore the ground on which Ramón Rodríguez Vázquez was standing was damp.

This is an important point because the lower court based thereon its conclusion that the electric current passing over the wires of the defendant company was the usual current— that is, that it was not in excess of 110 volts—and that the doctrine of *res ipsa loquitur* referred to by this court in its decision of June 25, 1912, is not applicable.

The evidence on this point is as follows:

Witnesses for the plaintiff, Quintana, P. J. Coll, J. V. Coll, and Ramos, testified as follows: The first, that at the time of the accident Rodríguez was standing on the ground which in the middle of the street was damp because it had been sprinkled, but it was dry where he was standing because the water did not reach that far. The second, that the place where Rodríguez was standing was dry, but the center of the street was wet because it had been sprinkled. The third, that the place where the man was standing was absolutely dry. The fourth, that the place where Rodríguez was standing when he grasped the wire and received the shock was dry, as is proven by the fact that when he was taken up he was not muddy although he had been rolling on the ground: that he had no mud or moisture on his hands.

A. E. Horton, employee of and witness for the defendant, testified that it was his duty to keep a book; that he was in his office on October 11, 1910; that he knows that it rained on that day because he made an entry in the book; that it rained before noon; that the office was situated on the road to the port.

Thereupon the plaintiff called witnesses Ramos and Quintana, who repeated their testimony that it had not rained on the day of the accident at the place where the same occurred, giving as a reason for remembering that fact that they were employed in measuring and marking timber in the open air, which work is not done on rainy days because the marks would be washed out. The said witnesses also testified that the place where the accident occurred is considered a ward of the port of Ponce and that it often rains in the city of Ponce when it does not rain at the port.

The trial court analyzed the said evidence carefully, rejected the testimony of the witnesses for the plaintiff as unworthy of belief and, giving credence to the testimony of the only witness for the defendant, found that it had rained.

The judge, in his opinion, admits that there was no direct evidence that it rained at the place of the accident, but witness Horton having testified that it rained on the day of the accident and that he made a note thereof in his office which is situated on the road to the port, he infers that it must have rained also in the ward of the port.

We cannot accept the inference of the trial court as necessarily true. The port of Ponce is situated at a considerable distance from the city. The Portugués River flows between them. Two witnesses testified that it rains often in the city when it is not raining at the port, and their testimony conforms to the actual facts. The very trial judge stated as follows:

"We frankly confess that as to the fact upon which this inference is based, namely, that house No. 28 on the road to the port was within

the radius of the downfall of rain or even that it rained on October 11, our mind is not as firmly convinced as it is with regard to each and all of the other facts which we consider proven and *which are not a necessary consequence* of the first two which we have just indicated. Nevertheless, our mind has not rejected them absolutely but has accepted them satisfactorily and therefore we have included them in our findings."

This being the case, we must hold that there is no real conflict in the evidence on the question as to the rain and consequently as to the dampness of the ground on which Rodríguez was standing. The evidence of the defendant shows nothing in a legal manner, whereas on the contrary the evidence of the plaintiff establishes the fact that it did not rain and that the place was dry.

The reason stated by the trial court in its opinion for not giving credence to the witnesses for the plaintiff is that it considers it impossible that they could have taken notice of the detail that the ground was dry at that moment of natural excitement. Nevertheless, the same court gives credence to the testimony of the same witnesses on the point of the visible breaks of one inch in length in the insulation of the wires of the defendant company which carried the current that caused the death of Rodríguez.

Such a contrariety in weighing evidence is not warranted. In our opinion the fact that the same witnesses testified on one point which may be favorable and on another point which may be adverse to the party calling them, may be considered as rather demonstrative of the truth of their testimony on both points.

This being so, we are of the opinion that the court committed a manifest error in finding that the ground on which Rodríguez was standing when the accident occurred was damp.

IV. The appellant contends that the trial court also erred in its third and fifth findings of fact to the effect that the wires which came in contact with the wire which Rodríguez held

in his hands carried an electric current of not more than 110 volts.

Let us consider the evidence. The wires of the defendant company which came in contact with the telephone wire which Rodríguez was stringing were used for the purpose of furnishing light to a dwelling house. One witness testified at the trial that the wire used for that purpose carried a current of only 110 volts, which current is obtained by transforming the potential of the higher voltage current carried by the main wires by means of an apparatus for that purpose. This is in accordance with all the writers on electricity whom we have consulted.

Following the general rule stated by the witness and considering that nothing in the evidence showed the contrary, the court reached the conclusion to which we have referred.

We hold a different view. The trial court itself says in its fourth finding that when Rodrguez pulled the wire "he was lifted violently and thrown against the balcony of the adjoining house, * * * his body receiving several shocks." Dr. Vogel testified that when Rodríguez was taken to the hospital "his whole face, forehead, nose, arms, hands, breast, abdomen and one leg were covered with burns; that the burns were very deep, especially those on his hands and forearms; that he died of paralysis caused by *emboli* which resulted from the burns."

Can an electric current of 110 volts lift a strong man violently and throw him against the balcony of an adjoining house, inflicting severe shocks and causing such burns as those described by Dr. Vogel in this case, and finally death?

The expert evidence introduced by the plaintiff shows that it cannot. In order to conclude that it can the expert testimony of the defendant must take as a basis the dampness of the ground on which the person who received the electric current was standing, and we have already seen that this circumstance did not exist in this case.

Wharton on Medical Jurisprudence, volume 3, pp. 280 *et seq.*, says:

"The recent introduction of electricity of high voltage into general commercial use has brought with it a number of accidents and fatalities. Electric power, as supplied commonly, is either the direct current, with a voltage of 110 to 550, or the alternating current, with a voltage of 1,100 to 6,000, or even as high as 60,000, for long distance transmission, as from plants like that at Niagara Falls. The alternations commonly vary from 25 to 100 per second. These currents are transformed to the desired potential (usually low) at the destination. Street cars are generally run on a current with a voltage of about 550; motors at voltages varying from 110 to 550, according to the local conditions; houses are supplied with incandescent lights at a voltage of 110, either direct or alternating. Arc lamps are commonly run by direct current, the voltage depending upon the number of lamps in the circuit, sometimes being as high as 5,000 volts. Telephones and telegraphs are operated at a comparatively low voltage, and such a small amperage as practically never to cause an accident.

"Injuries from these currents usually come with the high voltages; but the alternating current, even of low voltage, is much more dangerous than the direct current. Exception, however, must be made of the exceedingly rapid alternating currents of Tesla and d'Arsonvol with which currents of from 10,000 to 40,000 volts may be applied to the body without any effect. The alterations of these currents are about 10,000 to 20,000 per second.

"Another point, too, must be taken into consideration, and that is the resistance to the current offered by the body. This resistance is dependent upon the efficiency of the contact between the electrical conductor and the body, and the condition of the surface of the body. If the body surface is moistened with perspiration, or by any saline solution, the body receives much more of the current than if the skin is perfectly dry. Again, the resistance of the body depends upon the portion of the body that the current traverses. If the current passes through the entire body it naturally encounters much more resistance than if it traverses merely one hand. Hence, to say how much effect a certain current may have upon the body we must know not merely the character of the current, but also the conditions of the body, and the part of the body that it passes through; and then we can estimate but roughly the effect which the current will have. In a series of experiments on animals to determine the best method of

executing criminals, the committee appointed by the State of New York reported results which showed that dogs weighing from 10 to 90 pounds had a resistance varying (not in proportion to their weights) from 3,600 to 30,000 ohms; and in one case of a dog weighing 57½ pounds a resistance of 200,000 ohms. These dogs were killed with alternating currents lasting only an instant, or of but a few seconds' duration, the voltage of the currents being from 800 to 140 volts in the various cases; while in the dogs exposed to the direct current, one with a resistance of only 6,000 remained unhurt after exposure to seven shocks with a voltage of from 1,000 to 1,420 volts, and a seventh exposure of two and one-half seconds to a current of 1,200 volts. The dog of 200,000 ohms resistance withstood the direct current of ·304 volts for thirty seconds, and the alternating current of 100 volts for sixty-five seconds. The resistance of the human body may be roughly estimated at 10,000 ohms; but this is subject to great variations, and with these variations the dangers from electric currents vary. It may be reduced, as in electrocutions, to 200 or 300 ohms.

"Accidents from electricity most often occur, naturally, among those working with electrical machinery and wires, and the injuries received are of great range, from slight burns to marked nervous effects or instantaneous death. The following are instances of recovery from injuries due to high voltage currents that are ordinarily considered mortal. Donnellan reports the case of a man forty years of age, who grasped the ends of a wire carrying 1,000 volts. He was rendered immediately unconscious and remained in profound coma for a half hour, until seen by the physician, when his face was pale and bathed in perspiration. Forty minutes after the contact he vomited and then became wildly delirious, so that it took the efforts of three men to hold him in bed. He moaned and cried incoherently and had severe convulsions, rapidly repeated, in spite of morphine. After a couple of hours of convulsions he fell into a sleep from which he awoke four hours later, dazed and sore all over. The next day he had recovered except for the burns on his arms and legs along the lines where the wires had been in contact with the clothing, but the clothing showed no signs of scorching.

"Mr. Smurthwaite gives an account of a man admitted to the infirmary in a semiconscious condition, suffering from severe burns on the hands and thigh. The man, who had a large bunch of keys in his pocket, was leaning with his right thigh against an unprotected brass fitting, adjusting the brushes on a motor with his right hand when he felt the shock. A fellow workman heard him shout, and

running to him, found him fixed to the machine in a condition of tetanic spasm, his back bent in the position of opisthotonos. On being knocked off the machine by his fellow workmen, he lay on the ground as if stunned, for about ten minutes, when he slightly moved his eyelids, but could not speak. There was a large hole burnt in his trousers over the pocket in which the keys were. The keys themselves had the appearance as if they had just been taken out of a hot furnace. There was a burn on his thigh of a peculiar shape; about the center of the wound there were a number of depressions which evidently corresponded to the heads of the keys, and for about two inches round this burn the skin was very much swollen and of a dusky red color. The right hand was burned very severely. On the second day the first phalanx of the thumb and the first finger had to be amputated. The circuit which caused the injury was of 2,150 volts.

"Hedley reports the case of an electrical engineer, who accidentally put himself in circuit with a 3,000 volt circuit while he was standing on a chair. He said that the first thing he realized was that he was standing on the floor. He had no clear idea whether he jumped off or was knocked off. His forearm was drawn up to his chest, and the hand clenched. All power of movement below the elbow was absolutely lost, but the arm at the shoulder could be moved. He felt pulsations in time with the alternations of the current (83 periods per second) from a little above the elbow down, which gradually became less violent and the motor power in the forearm gradually returned. In three minutes he felt 'none the worse.' But ten minutes later there was a sensation of burning on the fingers, where examination showed that there was a burn. There was no other effect except that the man expressed himself as feeling decidedly better in general health. An estimation of the voltage to which the man's body was subjected was conservatively placed at 2,500 volts, his body resistance at 10,000 ohms, and the current at 0.25 amperes.

"The following case is significant from the fatal result following an ordinary 100-volt alternating lighting current. A carpenter kneeling on a gas pipe while doing some repairing in an attic, accidentally touched the back of his head against a denuded wire running to a droplight. The day was hot and the man perspired freely. His clothes were saturated with sweat. The man gave a slight outcry, a convulsion, and stretched out in opisthotonos. A companion removed him fifteen to thirty seconds later, and in so doing got a shock from handling the wire. The man gasped a few times only, and then was dead. The only injury was a slight burn 3/16 of an inch wide and 2½ inches long, over the occiput, scarcely going through the cuticle.

The city electrician said that the charge was that of an ordinary lighting current for individual or chandelier lights,—100 volts, from a 50 cycle, 6,000 alternation system."

From the above we cannot deduce that there is a fixed rule for the number of volts necessary to cause the death of a person, but it may be inferred that the voltage must be higher than 110, which is generally considered harmless. We have found only one case to the contrary and that is the last one referred to by Wharton, where death was occasioned by an alternating lighting current of 100 volts, but it must be remembered that the intensity of the current was fixed only by the testimony of the city electrician and, besides, the part of the body where the shock was received must be considered.

In view of the effects of the shocks produced on the body of Rodríguez, until the contrary is plainly shown we shall be of the opinion that the current passing over the defendant company's wires was stronger than 110 volts and, therefore, of greater intensity than the voltage usually employed for supplying light to private residences. In failing so to find the lower court also committed the manifest error alleged by the appellant.

V. In our opinion the appellant is right in contending that the lower court erred in its seventh finding to the effect that by reason of the dampness of the ground on which Ramón Rodríguez Vázquez was standing the number of ohms of resistance offered by his body to the electric current was reduced and that for this reason the current of 110 volts transmitted over the wire of the defendant company could produce the effects which it did.

The fact on which this conclusion rests does not exist, therefore the conclusion cannot be sustained. On the contrary, as held by this court in its opinion of June 25, 1912, the circumstances of the case speak for themselves (*res ipsa loquitur*) and, in our opinion, show that the current which lifted Rodríguez and hurled him against the balcony of a

house adjoining the one in front of which he was standing, continuing to shock him and causing the burns described and finally resulting in his death, was stronger than 110 volts.

VI. The appellant contends that the court erred in esserting in its eighth finding that it had not been proven that the wires connecting house No. 28 came in contact with other wires of the defendant company carrying currents of greater intensity. In our opinion there is no direct evidence in the record on this point, but if the circumstances show that the current passing over the said connecting wires was stronger than 110 volts and if the current generally transmitted by that class of wires is 110 volts, then there can be no doubt that the transformers of the defendant company failed to operate at that moment or that the connecting wires were in contact in some way with the other wires belonging to the defendant carrying a stronger current, there being no wires at that place carrying high voltage electric currents except those of the said company used for operating its trolley cars. In any event, in view of the violent manner in which the death of Rodríguez occurred, we are of the opinion that the doctrine of *res ipsa loquitur* is applicable to the case and that the burden was on the defendant to prove that it was not negligent.

VII. The appellant contends that the trial court erred in its ninth finding of fact to the effect that the wires of the defendant company were not perfectly insulated and that the denuded places were visible from the street.

We have considered carefully the evidence introduced and notwithstanding anything to the contrary appearing in the opinion of this court of June 25, 1912, we must hold that the conclusion of the trial court is entirely correct on this point.

VIII. The appellant contends correctly in our opinion that the trial court erred in concluding in its tenth and eleventh findings that the telephone company by which Rodríguez was employed gave him the necessary instructions as to the manner of performing his work and particularly as to the fact

that he should treat as dangerous all the electric wires which he might come in contact with in the performance of his duty.

It is not shown clearly from the evidence that specific instructions were given to Rodríguez. The manager of the telephone company, who testified, evidently relied on his general practice of giving such instructions. Rodríguez was an ordinary workman before he became a' lineman. The proper time to give him such instructions would have been when he was made a lineman, but the manager did not remember that or any other specific instance; although he was questioned about it. The general instruction given by the manager to the effect that he should bear in mind that all the wires were dangerous is not alone sufficient to make a lineman guilty of contributory negligence if in handling a wire he had every reason to believe that it was not dangerous. Finally, we will say that we cannot deduce from the examination we have made of the evidence that specific instructions were really given to Rodríguez to avoid coming in contact with electric wires, and certainly not that the company insisted that he should comply with the instructions in the manner in which they were given.

Moreover, the Supreme Court of Massachusetts, in the case of *Mahan* v. *Newton and Boston Street Railway,* 189 Mass., 5, said:

"The rule that linemen should treat every wire as a live wire was made in their interest and for their safety as well as in the interest of the company, and was intended as a general standard of conduct for the men in working about the wires of the company. It would be going too far to say that in no case and under no circumstances would a lineman be justified in treating a wire as a dead wire because of the rule. That would be making the rule itself a conclusive standard of negligence. Whereas it was at most only one circumstance to be considered with others."

IX. Finally, the appellant contends that the trial court erred in finding (*a*) that Rodríguez was guilty of contributory negligence; (*b*) that his negligence was the proximate

and immediate cause of the injury he received; (*c*) that although the defendant was negligent his negligence was only remote, and (*d*) that the defendant had no opportunity to prevent by the use of care and diligence the consequences of the negligence of Rodríguez.

Many of the aspects of these questions were fully considered in the opinion delivered by Mr. Justice MacLeary on the former hearing of the case. We agree with the lower court that the defendant company had no opportunity to avoid the danger to Rodríguez after he had placed himself in a perilous position and, therefore, that the doctrine laid down in the cases of *Davies* v. *Mann,* 10 M. & W., 546; *Inland and Seaboard Coasting Company* v. *Tolson,* 139 U. S., 551, 558, and in some of the other cases cited in our former opinion (18 P. R. R., 593) is not applicable, but the other principles established in said opinion are still the law of the case. This being settled we will proceed with our analysis.

In the first place, the burden of proving contributory negligence rests on the defendant. It is a matter of defense. This is the rule in the Supreme Court of the United States, in the Federal courts and in the courts of a majority of the states. This is a sounder rule than the one which throws the burden on the plaintiff and its soundness is approved by Thompson on Negligence, paragraph 366, and by other authors.

It is true that in the case of *Díaz* v. *The San Juan Light and Transit Co.,* 17 P. R. R., 64, we said that in cases of this nature it was sufficient "to prove that the plaintiff, through the fault or negligence of the defendant and not through his own fault and negligence, had sustained a real damage," and that the foregoing, taken in connection with subdivision (*b*) of the summary of the fundamental principles involved in the case made at the conclusion of the opinion and with subdivision *b* of the syllabus, headed "Matters which should be alleged and proved," might be construed in the sense that this court has decided that it is incumbent upon the plaintiff to allege and prove lack of contributory negligence. But in

that case our mind was directed towards the sufficiency of the evidence in general and it was not our intention to set up the rule that the plaintiff was bound to show himself free from contributory negligence. However, as the manner in which the opinion is drawn up might give rise to doubts, we think it advisable to give an explanation of our position. In the future the said case of Díaz should be applied in connection with the principles laid down in this case of Rosado. As regards the influence which our decision in the case of Díaz may have had on the position taken by the defendant in this case, we will say that it in no way appears that the said party was misguided, inasmuch as it alleged as a matter of defense in its answer to the complaint, in accordance with the true doctrine, the contributory negligence of the person for whose death the claim is made. Besides, taking into consideration the facts which have been proven, we believe that the burden was on the defendant to show that Rodríguez had acted without due care.

The lower court made a complete analysis of the case of *Clements* v. *Louisiana Electric Light Company*, 44 La. Ann., 692, 16 L. R. A., 43, which was cited and applied in our former opinion. In discussing the rule as to recklessly encountering known dangers, Thompson in his work on Negligence says that "the true meaning of the rule, therefore, is that in order to impute contributory negligence to a person exposing himself to a danger he must (1) knowingly or with negligent ignorance, (2) voluntarily and (3) unnecessarily expose himself to it." And the case on which the author principally relies for this conclusion is that of Clements, *supra*. Negligence is not imputable to a person for failing to look for danger when under the surrounding circumstances he had no reason to apprehend any. Thompson on Negligence, par. 188; 29 Cyc., 514, 515; *Missouri Pac. Ry. Co.* v. *Johnson,* 77 Pac., 576; *Clements* v. *Louisiana Electric Company, supra.*

As we said in our former opinion, Rodríguez had been working only eight months as a lineman and the evidence does

not show that he was an experienced one. As a matter of fact, we do not know that he ever had to handle a dangerous wire before. There is no evidence before us that telephone wires are dangerous and it was not proved that the telephone company's wires were above the electric lighting company's wires in any other part of the city of Ponce. We do not know that Rodríguez ever before had passed a wire over any other dangerous wires. Nothing is shown in the record as to his experience or knowledge as a lineman. As to his duty to look out for danger, Rodríguez was not differentiated from any other ordinary workman. He was ordered to repair the telephone wire and he was acting in the line of his employment. The evidence shows clearly and unmistakably that the wire which caused his death generally carried the same current which runs into and is used in an ordinary private residence. There is nothing in the record to show that he had any reason to apprehend a danger or, in any event, a death-dealing one. And even if he had been under the obligation of observing the insulation and had seen that it was faulty, the most that he could have feared from throwing the telephone wire over the others was an electric shock. Only on the theory that he was obliged to anticipate the possible negligence of the company can it be said that Rodríguez was bound to look for the danger, and this is not generally the law. Thompson on Negligence, par. 180.

The lower court, in its twelfth conclusion, found that Rodríguez knew of the danger offered by electric currents. We do not find that Rodríguez was shown to have any knowledge of danger in the particular place where he was working or had any reason to fear any. The duty which the law imposes upon an experienced lineman is different from that which it imposes upon an ordinary workman. Thompson on Negligence, paragraphs 5734 *et seq.* But there was no reason for an experienced lineman to entertain any fear that a death-dealing current was carried by the said wires under the facts of this case. Moreover, as we have said repeatedly in both

of our opinions, Rodríguez was not shown to be an experienced lineman.

It is well to cite some of the analogous cases where it has been decided that there was no contributory negligence on the part of the plaintiff.

In the case of *McCabe* v. *Narragansett Electric Lighting Company*, 26 R. I., 427, the light was installed according to the instructions of the deceased and the installation was made for a current of only 104 volts. It was held that the fact that the installation was defective made no difference because the deceased had contracted for only a current of low voltage. It was admitted incidentally in that case that a current of 104 volts would not be dangerous although the person receiving it were standing on a wet floor.

In the case of *Paine* v. *Electric Illuminating, etc., Co.*, 64 App. Div. Rep. (New York), 477, it was held that it could not be said that the deceased was negligent in handling telegraph wires without rubber gloves in the absence of evidence that such was the usual practice in such circumstances or that the deceased knew, or in the exercise of due care should have known, that an electric current of high tension had been communicated to any of the wires on the pole where he was working.

In the case of *Phelan* v. *Louisville Electric Light Company*, 6 L. R. A. (N. S.), 459, the court held that an employee in a building lighted by electricity is justified in assuming, in the absence of notice to the contrary, that the transformer and other appliances for furnishing electricity are in good condition and free of defects.

In the case of *Hodgins* v. *Bay City*, 156 Mich., 687; 132 A. S. R., 546, the instruction was upheld that the deceased was not called upon to examine the electric wires of the defendant to see if they were properly insulated but had a right to assume that they were, and that unless the jury found that the danger therefrom was so patent that it should have excited his attention and been seen by him if he were ordinarily care-

ful, the deceased could not be charged with notice of the danger, but only with notice of such danger as might arise from a properly insulated wire, and that his degree of care should be commensurate with his experience and knowledge of the perils of the wires or he would be guilty of contributory negligence.

A general review of the authorities shows that the opinion delivered by this court at the previous hearing is the correct one, *i. e.,* that in the absence of something in the way of knowledge, experience, or warning to put a person on his guard, he cannot be charged with contributory negligence when he performs his work in the usual or most convenient way. See also the case of *Card* v. *Wentachee Valley Gas and Electric Company,* 137 Pac., 1047.

In the case of *White* v. *Reservation Electric Company,* 134 Pac., 807, it was held that the rights of persons in their houses are unlimited in the absence of signs of danger. While we do not hold that the rights of this lineman were equal to those of a person in his house, nevertheless the principle is somewhat applicable when we take into consideration the fact that the current here used was the same as that used by any ordinary householder in the city of Ponce.

In short, in view of all the foregoing we cannot reach the conclusion that the accident which originated this action was due to the contributory negligence of Ramón Rodríguez Vázquez.

On the contrary, we believe and shall continue to believe that the action of the defendant company in unnecessarily allowing said electric wires to be connected for more than seven years without taking the trouble to insulate them, leaving them in such a condition that they carried a death-dealing instead of a harmless current like others of their class, constitutes the real proximate and immediate cause of the injury for which the indemnity is sought.

Having reached the foregoing conclusions, the judgment appealed from must be reversed.

The appellant contends that in case this court should reach the conclusion that the judgment should be reversed, in accordance with section 306 of the Code of Civil Proceedure as amended in 1906 (Acts of 1906, p. 164), it should also proceed to render the judgment which should have been rendered by the district court.

And the appellant further maintains that this court should fix the indemnity in the exact amount claimed in the complaint, inasmuch as it is sworn to and the defendant in its answer only denied "the extent and amount of the damages alleged to have been suffered by the plaintiff," citing in support of her contention the following jurisprudence:

"In an action for damages a denial in the answer that the plaintiff has suffered in the exact sum claimed in the complaint, is insufficient." *Huston* v. *T. & C. C. T. R. Co.,* 45 Cal., 550.

"The answer not containing any specific denial of the amount of damages alleged in the complaint, those allegations were therefore admitted, and there was no issue upon that question." *McLaughlin* v. *Kelly,* 22 Cal., 212, 223.

"In an action for trespass, where there is no specific denial of the amount of damage alleged in the complaint, although the alleged cause of damage is specially traversed, it is doubtful whether such answer amounts to a denial of the damage." *Rowe* v. *Bradley,* 12 Cal., 227.

Nevertheless, in view of the circumstances of this case and the cases cited not being entirely similar to the case at bar; and applying the doctrine that "where the action is brought for unliquidated damages, an answer containing a general denial, together with a special denial that the plaintiff has been damaged in the amount claimed, has been held sufficient to raise such issue" (*Conway* v. *United States,* 95 Fed., 615; 37 C. C. A., 200; 13 Cyc., 182, notes 61 and 62), we are of the opinion that the court is not obliged to fix the indemnity in the exact amount claimed in the complaint. If the said amount is fair and conforms to the merits of the evidence it should be accepted, but if not, it should be reduced to the proper amount.

In our opinion, taking into consideration that, according to the finding of the lower court, Ramón Rodríguez Vázquez was a strong, sober, intelligent and active man of 22 years of age who took care of and supported his family with his earnings of one dollar daily, his family depending exclusively upon him for their support, we are of the opinion that the indemnity which should be paid by the defendant to the children of Ramón Rodríguez Vázquez, in accordance with section 61 of the Code of Civil Procedure, should be not less than $3,000.

In view of. the foregoing, the judgment appealed from should be reversed and the defendant adjudged to pay to the two daughters of Ramón Rodríguez Vázquez, born in wedlock with Petra Rosado y Correa, the aforesaid sum together with the costs, disbursements, and a reasonable attorney's fee.

*Reversed and judgment rendered in favor of the plaintiff for $3,000 with costs, disbursements, and attorney's fees.*

Chief Justice Hernández and Justices Wolf and Aldrey concurred.

Mr. Justice Hutchison took no part in the decision of this case.